UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ERNESTINE GRANT and MARJORIE WALKER, on
behalf of themselves individually and on behalf of all
similarly situated persons,

                              Plaintiffs,

    -against-

THE NEW YORK TIMES COMPANY, MARK
THOMPSON, and MEREDITH LEVIEN,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

1:16 CV 03175 (PKC)(DCF)

**ECF CASE**

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS GENDER AND EQUAL PAY ACT CLAIMS
AND TO STRIKE CERTAIN CLASS CLAIMS**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ...............................................................................1

RELEVANT FACTUAL BACKGROUND................................................................2

ARGUMENT ...........................................................................................................4

I.     Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Gender Discrimination...................................................................................................4

II.    Plaintiffs' Theories of Liability and the Relief Sought Preclude Certification Under Fed. R. Civ. P. 23(b)(1) or Fed. R. Civ. P. 23(b)(2)............................8

        A.    Certification is Inappropriate Under Rule 23(b)(1) Because Plaintiff's' Claims Are Not Limited to Equitable Relief and Include Allegations of Intentional Discrimination. ....................................................10

        B.    The Monetary Relief Sought Precludes Rule 23(b)(2) ............................13

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ...........................................................................9

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014)...........................................................................14

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).........................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................4, 6, 7

*Bacon v. Honda of Am. Mfg.*,
  205 F.R.D. 466 (S.D. Ohio 2001), *aff'd*,
  307 F.3d 565 (6th Cir. 2004) ...........................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................4, 6, 8

*Blackwell v. Skywest Airlines*,
  245 F.R.D. 453 (S.D. Cal. 2007) ....................................................................11

*Cashman v. Dolce Int'l/Hartford*,
  225 F.R.D. 73 (D. Conn. 2004)....................................................................8, 12

*Cepeda v. Bloomberg*,
  No. 11 Civ. 2914 (WHP), 2012 WL 75424 (S.D.N.Y. Jan. 4, 2012) .......................6

*Douglin v. GreatBancTr. Co.*,
  115 F. Supp. 3d 404, 414 (S.D.N.Y. 2015)....................................................14

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010), *overruled on other grounds*,
  564 U.S. 338 (2011)........................................................................................15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..........................................................................15

*Eubanks v. Billington*,
  110 F.3d 87 (D.C. Cir. 1997)..........................................................................14

*Felix v. Northstar Location Servs., LLC*,
  290 F.R.D. 397 (W.D.N.Y. 2013).....................................................................12

*Fleming v. MaxMara USA, Inc.*,
No. 06 Civ. 6357 (CBA) (JMA), 2010 U.S. Dist. LEXIS 39108
(E.D.N.Y. Apr. 21, 2010) ................................................................................................5

*Gorzynski v. Jetblue Airways Co.*,
596 F.3d 93 (2d Cir. 2010) .............................................................................................7

*In re Navy Chaplaincy*,
306 F.R.D. 33 (D.D.C. 2014) ..........................................................................................9

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................................10, 12

*Nationwide Life Ins. Co. v. Haddock*,
460 F. App'x 26 (2d Cir. 2012) .....................................................................................13

*Oakley v. Verizon Commc'ns, Inc.*,
No. 09 Civ. 9175, 2012 U.S. Dist. LEXIS 12975 (S.D.N.Y. Feb. 1, 2012) ...........................12

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ......................................................................................................13

*Palsgraf v. Long Island R.R. Co.*,
248 N.Y. 339 (1928) .......................................................................................................6

*Pearson v. Merrill Lynch*,
No. 10 Civ. 5119 (RJS), 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012) ...............................5

*Rambarran v. Dynamic Airways, LLC*,
No. 14 Civ. 10138 (KBF), 2015 U.S. Dist. LEXIS 97651
(S.D.N.Y. July 27, 2015) ...............................................................................................12

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
2006 U.S. Dist. LEXIS 99691 (E.D.N.Y. Apr. 11, 2006) .....................................................12

*Spann v. AOL Time Warner, Inc.*,
219 F.R.D. 307 (S.D.N.Y. 2003) ....................................................................................16

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ......................................................................................................15

*Teixeria v. St. Jude Med. S.C., Inc.*,
No. 1:14 Civ. 00789 (MAT) (HBS), 2016 WL 3547932
(W.D.N.Y. June 30, 2016) ...........................................................................................6, 7

*Toney-Dick v. Doar*,
No. 12 Civ. 9162 (KBF), 2013 U.S. Dist. LEXIS 134315
(S.D.N.Y. Sept. 13, 2013) ..............................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................... passim

*White v. Pacifica Found.*,
   973 F. Supp. 2d 363 (S.D.N.Y. 2013)...................................................................5


STATUTES

42 U.S.C. § 1981 ...................................................................................................1

Equal Pay Act of 1963, 29 U. S. C. § 206(d)......................................................1, 3

New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ...........................1

New York Labor Law § 194 .....................................................................................1

New York City Human Rights Law, NYC Admin. Code §§ 8-101 *et seq.*....................1


OTHER AUTHORITIES

2 William D. Rubenstein, *Newberg on Class Actions* § 4:18 (5th ed.)..........................12

7AA Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* §
   1773 (3d ed. 2010) .............................................................................................11

Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of
   the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356 (1967)..................11

Fed. R. Civ. P. ................................................................................................ passim

Fed. R. Civ. P. 23(b) ...................................................................................... passim

Fed. R. Civ. P. 23(b)(1)(A) ...........................................................................10, 11,12

Fed. R. Civ. P. 23(b)(1)(B) .........................................................................9, 10, 12, 13

Fed. R. Civ. P. 23(a) ...................................................................................... passim

Fed R. Civ. P. 23(b)(2)................................................................................... passim

Fed R. Civ. P. 23(b)(3)................................................................................... passim

Fed. R. Civ. P. 12 .................................................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................................4,16

## PRELIMINARY STATEMENT

Plaintiffs Ernestine Grant and Marjorie Walker, two Black females over the age of 60 who are employed by The New York Times Company ("The Times"), present a 397-paragraph complaint asserting discrimination against them based on essentially every protected class to which they belong. They contend that The Times has discriminated against them because of their race, their age, their gender, and, for Walker, her disability, in violation of 42 U.S.C. § 1981, the Equal Pay Act, the New York Labor Law, and the New York State and City Human Rights Laws. They further insist that The Times has indiscriminately discriminated against Account Managers in its Advertising Department who are minorities, or over 40 years of age, or female, or any combination of the three, and seek to certify several classes under Fed. R. Civ. P. 23 and collectives under the Equal Pay Act and Age Discrimination in Employment Act.

Several aspects of this scattershot Complaint fail at the outset.  First, amid the welter of grievances and theories, Grant and Walker plead themselves out of court on their gender claim: half of the employees they cite as comparators, those whom they allege were paid more and otherwise favored, are female.  More generally, Plaintiffs fail to plead any facts to support their conclusory assertions that The Times was motivated by hostility to female employees, and as a result the Complaint fails to meet basic pleading requirements as to the gender and Equal Pay Act claims.

Second, just as Plaintiffs assert multiple grounds of alleged discrimination, they also seek to certify classes under all three subsections of Rule 23(b), without regard to the legal requirements that define the different permissible classes under those rules.  Claims like those asserted here, which seek individualized money damages in a variety of forms (past and future income, wages, harm to professional and personal reputations, loss of career fulfillment,benefits,

compensation for stress and anxiety, emotional pain and suffering, emotional distress, mental anguish, humiliation, and "all other monetary losses"), can only be certified, if at all, under Fed. R. Civ. P. 23(b)(3), which requires a showing that common questions predominate over individual issues. Plaintiffs' claims under Rules 23(b)(1) and 23(b)(2) fail as a matter of law, and should be stricken.

## RELEVANT FACTUAL BACKGROUND[1]

Plaintiffs Ernestine Grant and Marjorie Walker are Black female employees of The Times. Grant is 62, and Walker is 61. Second Amended Complaint (hereafter the "Compl.") ¶¶ 48, 49. Grant and Walker are Account Managers in The Times' Advertising Department, where they are responsible for selling print and digital advertisements, and receive compensation based in part on how much advertising they sell. Compl. ¶¶ 147, 171, 192.

Grant and Walker primarily allege that they have been disadvantaged as compared to "younger, white colleagues," whom they claim receive more lucrative accounts and earn higher compensation than they do. *See, e.g.*, Compl. ¶ 179. The Complaint consistently characterizes the problem as based on race and age. *See, e.g.*, Compl. ¶¶ 1 ("Advertising staff . . . is systematically becoming increasingly younger and whiter"); 21 (claiming a desire to hire "younger white managerial staff"); 28 (new hires "were, for the most part, young and white"); 41 (alleging denial of benefits "commensurate with younger white employees"); 85 (describing the favored group as "younger employees without families who generally were white"); 95 (supervisor socialized with "other younger, white employees"); 96-97 (Levien allegedly hosted parties "for the younger employees" and "assisted the younger employees more overtly" with

---

[1] As required on a Rule 12 motion, The Times here recites the facts only as they are alleged in the Amended Complaint and does not concede the accuracy of any of these allegations, all or nearly all of which will be strenuously contested.

- 2 -

"premium tickets and other extras" not offered to "older employees of color"); 98 (time off given to "younger white employees"); 101-104 (recounting comments in a diversity committee meeting about favoritism of "younger, non-diverse" and "younger, non-minority" employees); *see also id.* ¶¶ 86, 110, 117, 121-27 (alleging different rules for "longstanding, older employees of color" as compared to "younger, white employees"); 136, 140-41 (claiming that new initiatives discriminated against "older employees of color"); 159; 162-166; 179; 194 ("older Black employees have been steered to . . . low-revenue teams to make room for younger white employees"); 195; 205-10.

The Complaint also insists that Plaintiffs were disfavored based on their gender, but provides no factual details. For example, the Complaint alleges that members of a Times diversity committee made complaints of unfair account distribution "based on race, gender, and age," ¶ 100, but the multiple specific allegations that follow relate solely to race and age, *see* ¶¶ 101-04. Both Grant and Walker list younger white comparators whom they claim were given better opportunities, but the allegedly favored employees are evenly split between males and females. *See* Compl. ¶¶ 163-66 (listing three males and three females allegedly given better accounts than Grant), ¶¶ 208-10 (listing three males and two females allegedly given better accounts than Walker). Walker alleges that she was discriminated against by her female supervisor solely on racial grounds, ¶¶ 181-87, and both Grant and Walker allege that the discriminatory regime was implemented by a female Chief Revenue Officer, Meredith Levien, *e.g.*, ¶ 20.

In addition to proposed collectives under the Equal Pay Act and the Age Discrimination in Employment Act, the Complaint seeks to certify race, age, and gender classes under all three subsections of Fed. R. Civ. P. 23(b). *Id.* ¶¶ 236-45, 260-69, 284-93. The prayer for relief

includes a myriad of damages demands, not just allegedly lost wages and benefits, but damages

for harm to personal and professional reputations, loss of "career fulfillment," humiliation,

embarrassment, stress and anxiety, mental anguish, emotional pain and suffering, and emotional

distress. Compl. at p. 73.

## ARGUMENT

### I.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Gender Discrimination.

Though the Complaint repeatedly asserts without elaboration that Grant and Walker were

disfavored because of their gender, such bald claims cannot survive a motion to dismiss under

Rule 12(b)(6).  A pleader's obligation goes beyond "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, a complaint must

state a "plausible claim" for relief in order to survive a motion to dismiss, which requires the

pleader to go beyond "labels and conclusions" to include "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

U.S. at 663, 678 (citing *Twombly*, 550 U.S. at 556).   Where the "well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

– but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citation

omitted).

As to gender, Grant and Walker include no factual allegations to suggest that their gender

– as opposed to legitimate management decisions, or even unlawful race or age considerations –

was the basis for any disadvantage they claim to have suffered.  They offer only a generalized

claim of "institutional gender inequality," Compl. ¶ 13; *see id*. ¶¶ 73-76, with no indication that

such a policy had any effect on Grant or Walker.  As to their own situations, Grant and Walker

merely add the word "gender" to allegations that have nothing to do with gender, such as the blanket assertion that each of them was "denied opportunities to earn as much as [their] *younger white* peers because of [their] age, race and/or gender." *Id.* at ¶¶ 167, 211 (emphasis added).[2]

Indeed, the Complaint not only fails to offer "factual content" establishing a "plausible claim," but also affirmatively alleges facts inconsistent with a gender claim. Most strikingly, the Complaint names several *women* who were allegedly favored at the expense of Grant and Walker.[3] Compl. ¶¶ 165-66, 209-10. Grant alleges that Maria Eliason, "a white female Account Manager who is in her 40s," "has been allocated higher revenue accounts than Ms. Grant," and that Maggie Kiselick and Caroline Boccarosse "earn far in excess of Ms. Grant due to the unequal distribution of high revenue accounts to each of them." *Id.* ¶¶ 165-66. Walker uses the same language to complain about better treatment afforded to Boccarosse and Kiselick. *Id.* ¶¶ 209-10.

Not surprisingly, courts have found that plaintiffs undermine any inference of discriminatory intent when they compare themselves to someone in the same protected category. *See e.g., White v. Pacifica Found.*, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013) ("The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent"); *Pearson v. Merrill Lynch*, No. 10 Civ. 5119 (RJS), 2012 WL 983546, at *8 (S.D.N.Y. Mar. 22, 2012) ("An inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category."); *Fleming v. MaxMara USA, Inc.,* No. 06 Civ. 6357 (CBA) (JMA), 2010 U.S. Dist. LEXIS 39108, at *28-29 (E.D.N.Y.

---

[2] The same pattern can be seen in ¶¶ 100-04, where Grant and Walker first allege that they and other diversity committee members made complaints about unfair treatment "based on race, gender, and age," ¶ 100, but then provide examples that relate solely to race and age, ¶¶ 101-04.

[3] These examples are provided on the heels of the allegation that "younger white *individuals*" – not males – "at the same level as [Grant and Walker] were paid compensation far in excess of [their] own" (*Id.* at ¶¶ 162, 207) (emphasis added).

Apr. 21, 2010) (finding discrimination claim "clearly meritless" where plaintiff was replaced by a member of her own protected class and failed to present "'other facts from which the inference' of discrimination could be drawn").  The same inconsistency appears in the generalized allegations of hostility towards women: the Complaint asserts that CEO Mark Thompson was intent on pushing women out of the organization, Compl. ¶¶ 10-11, 17, but also notes that "Mr. Thompson's first major appointment of a business-side executive" was a female, who was appointed to The Times' Executive Committee and later assumed the newly created role of Chief Revenue Officer. (*Id.* at ¶¶ 9, 19, 84).

The Complaint now includes a general allegation about a union claim that there is a pay gap between male and female employees.  Compl. ¶¶ 1, 32.  But the claimed existence of a study showing disparities does not satisfy *Iqbal*.  The plaintiff in *Cepeda v. Bloomberg*, No. 11 Civ. 2914 (WHP), 2012 WL 75424 (S.D.N.Y. Jan. 4, 2012), tried a similar argument.  There the plaintiff, an inmate at Rikers Island, alleged he suffered from exposure to toxic chemicals, and in support cited a news article reporting on a similar suit filed by Rikers corrections officers, an environmental study reporting on Rikers' previous use as a hazardous waste disposal site, and other materials.  *Id.* at *1-2.  Even granting the pro se plaintiff leniency in the standard of review, the Court dismissed the claim, finding that the materials about potential harm to others did not state a plausible claim that the plaintiff himself had been injured.  *Id.* at *2.  Similarly, in *Teixeria v. St. Jude Med. S.C., Inc*., No. 1:14 Civ. 00789 (MAT) (HBS), 2016 WL 3547932 (W.D.N.Y. June 30, 2016), a product liability action where the complaint relied on references to a study finding defects in the product, the court dismissed the claim, holding that:

> At most, these articles intimate "a sheer possibility that [St. Jude] has acted unlawfully." *Iqbal*, 556 U.S. at 678.  The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 . . . .  To paraphrase Judge Cardozo, "proof of

> [product liability] in the air, so to speak, will not do." *Palsgraf v. Long Island R.R. Co.*,
> 248 N.Y. 339, 341 (1928).

*Id.* at *11.  Plaintiffs here similarly make passing reference to a study of unknown quality alleging a general disparity in pay, but make no allegations plausibly suggesting that they personally have been the victims of gender discrimination.  The allegations naming women who have been favored, moreover, directly undercut the allegation of a systemic bias against women that the Complaint attempts to assert.

In opposing The Times' pre-motion letter, plaintiffs argued that the Complaint's reference to higher-paid females did not invalidate the gender claim because claims can be brought on behalf of a subset of a protected class.  Dkt. 31 at 2 (citing *Gorzynski v. Jetblue Airways Co.*, 596 F.3d 93, 109 (2d Cir. 2010).  That argument fails because Plaintiffs do not allege the "sex-plus" claim on behalf of a subset of employees that *Gorzynski* describes, neither in the original Complaint nor in the two amendments that followed.  Plaintiffs do not seek to certify a class consisting of older women, as a sex-plus claim would require; they propose an "Age Class" of "older employees," male and female, as well as a "Gender Class" consisting of "female employees . . . employed by the Company in its Business division as Account Managers," regardless of their age.  Compl. ¶¶ 248, 272.  Plaintiffs can apply *Gorzynski* and narrow their Gender Class to include only older women if they choose, but so long as they assert a class consisting of all female Account Managers, this case does not present a sex-plus claim of the kind *Gorzynski* describes, and Plaintiffs' allegations fall well short of satisfying *Iqbal* in alleging broad discrimination on the basis of gender.

The Federal Rules "do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Iqbal*, 556 U.S. at 686.  Rather, plaintiffs must plead a "statement of circumstances, occurrences, and events in support of the claim they present," and

not simply "naked assertion[s] devoid of 'further factual enhancement.'" *Id.* at 678 (quoting

*Twombly,* 550 U.S. at 557). Plaintiffs offer no factual context whatsoever for their claim that

they were not assigned accounts, compensated and/or afforded employment opportunities

commensurate with those given to male employees in Advertising; they simply say that they are

paid less than "younger, white individuals," and offer examples of alleged comparators, half of

whom are women. The gender claims under New York State anti-discrimination and labor laws

and the collective allegations under the EPA accordingly should be dismissed as a matter of law.

## II.      Plaintiffs' Theories of Liability and the Relief Sought Preclude Certification Under Fed. R. Civ. P. 23(b)(1) or Fed. R. Civ. P. 23(b)(2).

The drafters of Rule 23 provided for three types of class actions, spelled out in Rule

23(b). Classes certified under Rule 23(b)(1) or 23(b)(2), called "mandatory" class actions

because class members have no right to exclude themselves from the litigation,[4] apply in

situations where class relief is essential either to avoid prejudice to the defendant or the absent

class members (Rule 23(b)(1)), or to provide effective equitable relief (23(b)(2)).[5] Rule 23(b)(3),

by contrast, is intended for cases in which classes are not *essential*, but merely *convenient* –

where, because a significant number of claimants all rely on the same common evidence, the

claims can be adjudicated based on representative evidence without consideration of individual

---

[4] *See, e.g., Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 92 (D. Conn. 2004) ("Class actions under Rules 23(b)(1) and 23(b)(2) are often described as 'mandatory' classes, because individual class members may not opt-out of the class action and pursue separate litigation that might prejudice other class members or the defendant.").

[5] *See* Fed. R. Civ. P. 23, Advisory Comm. Notes, 1996 Amend., Subdiv. (b)(1) (subdivision applies in cases presenting "difficulties which would be likely to arise if resort were had to separate actions by or against the individual members of the class"), (b)(2) ("This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature . . . settling the legality of the behavior with respect to the class as a whole, is appropriate").

circumstances.[6]  That convenience may be overridden, however, by individuals' interest in pursuing their own claims (or not) as they see fit, rather than being chained to a class action brought by others, a particularly acute concern where the claim is one for damages.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 364 (2011) (class certification of a damages claim under Rule 23(b)(2) creates the possibility "that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from" (emphasis in original)); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (opt-out right in Rule 23(b)(3) classes "demonstrates concern for the effect of monetary claims on class cohesiveness"; "[m]onetary remedies are more often related directly to the disparate merits of individual claims"); *In re Navy Chaplaincy,* 306 F.R.D. 33, 56 (D.D.C. 2014) (denying Rule 23(b)(1)(B) certification in religious discrimination case to avoid any preclusive effect for absent class members so that they can bring their own claims in the future).

This case presents claims, above all, for money damages.  Grant and Walker fundamentally claim that they have been denied compensation as the result of discrimination. Every allegation in the Complaint about the disadvantage Grant and Walker each claims to have suffered relates to wages or the potential to earn higher wages, rather than the need for any injunctive or other equitable relief.  *See, e.g.*, Compl. ¶¶ 158-67, 204-11.  The prayer for relief goes further, seeking damages not only for wages and benefits (past and future), but for harm to personal and professional reputations, loss of "career fulfillment," humiliation, embarrassment, stress and anxiety, mental anguish, emotional pain and suffering, emotional distress, and "all other monetary losses."  Compl. at p. 73.

---

[6] Fed R. Civ. P. 23, Advisory Comm. Notes, 1996 Amend., Subdiv. (b)(3) ("In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient or desirable depending upon the particular facts.").

As a result, the class claims Grant and Walker assert may be brought, if at all, only pursuant to Rule 23(b)(3), not, as Plaintiffs insist, under Rules 23(b)(1) or 23(b)(2). *Dukes,* 564 U.S. at 362-63.  There is no need for discovery on this point; the Complaint on its face pursues a primarily monetary remedy, and The Times raises a question of law, not of fact.  This question of law should be resolved now, to confirm that when Plaintiffs move for class certification, they will have to show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs' pursuit of class recognition under Rule 23(b)(1) and Rule 23(b)(2) is merely an attempt to circumvent this heightened certification standard.

### A. Certification is Inappropriate Under Rule 23(b)(1) Because Plaintiffs' Claims Are Not Limited to Equitable Relief and Include Allegations of Intentional Discrimination.

Rule 23(b)(1) applies where a class action is necessary either to protect the defendant from inconsistent mandates that might result from individual actions (Rule 23(b)(1)(A)), or to protect absent class members whose rights might be prejudiced if an individual were permitted to sue without acknowledging the claims of others (Rule 23(b)(1)(B)).  In the words of the Rule, these "mandatory" classes are appropriate only where separate actions by individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed. R. Civ. P 23(b)(1)(A), or would, " as a practical matter . . . be dispositive of the interests" of nonparty class members "or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).  This case presents neither situation.

1. <u>Rule 23(b)(1)(A)</u>.  Subsection (b)(1)(A) is intended for situations in which separate actions by individual parties would "create a risk of . . . inconsistent adjudications." *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 74 (S.D.N.Y. 2006).  As such, Rule 23(b)(1)(A) "takes

- 10 -

in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 388 (1967)).  Disposing of such a claim on a class basis avoids "establish[ing] incompatible standards to govern [the defendant's] conduct."  Fed. R. Civ. P. 23, Advisory Comm. Notes, 1996 Amend., Subdiv. (b)(1)(A).

Cases involving individual claims of discrimination do not present such a risk.  "The mere fact that some plaintiffs might win and others might lose in individual actions" is insufficient to certify a class under Rule 23(b)(1)(A) because that does not present a risk of establishing incompatible standards of conduct.  *See, e.g., Bacon v. Honda of Am. Mfg.,* 205 F.R.D. 466, 483 (S.D. Ohio 2001) (denying Rule 23(b)(1) certification in pattern and practice discrimination suit brought by African-American manufacturing employees), *aff'd*, 307 F.3d 565 (6th Cir. 2004); *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 465 (S.D. Cal. 2007) (explaining that "the test is not met simply by raising a possibility that one court could reach a different conclusion on a similar issue than another court"); *see also* 7AA Charles Alan Wright  & Arthur Miller, *Federal Practice & Procedure* § 1773 (3d ed. 2010) (explaining that the rule "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts").

Moreover, "'[c]ourts in this Circuit have repeatedly recognized that certification under subsection (b)(1)(A) is limited to claims for *equitable* relief."  *Toney-Dick v. Doar*, No. 12 Civ. 9162 (KBF), 2013 U.S. Dist. LEXIS 134315, at *13 (S.D.N.Y. Sept. 13, 2013) (emphasis added)

- 11 -

(quoting *Oakley v. Verizon Commc'ns, Inc.*, No. 09 Civ. 9175, 2012 U.S. Dist. LEXIS 12975, at *31 (S.D.N.Y. Feb. 1, 2012)).  Many courts have held that this subsection does not apply to actions seeking compensatory damages, as Plaintiffs seek here.  *See, e.g., Rambarran v. Dynamic Airways, LLC*, No. 14 Civ. 10138 (KBF), 2015 U.S. Dist. LEXIS 97651, at *33 (S.D.N.Y. July 27, 2015).  "[I]f compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3)."  *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 99691, at *18 (E.D.N.Y. Apr. 11, 2006) (citing broad agreement that only actions seeking declaratory or injunctive relief can be certified under this section).  Thus, consideration of the proposed classes under Rule 23(b)(1)(A) is improper in circumstances where, as here, Plaintiffs seek relief in the form of compensatory damages and assert claims of intentional discrimination not contemplated by the Rule.

        2.    <u>Rule 23(b)(1)(B)</u>.  The mandatory class action device of Rule 23(b)(1)(B) is "designed to protect plaintiffs from one another" and typically allows for the "equitable distribution of . . . limited funds" where the available "pools of money . . . may not be adequate to cover the claims of all plaintiffs."  *Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 93-94 (D. Conn. 2004); *see also Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 405 (W.D.N.Y. 2013) ("The classic example of a (b)(1)[(B)] class action is a limited fund case: a situation in which many litigants have claims against a single asset and the asset's total value is unlikely to satisfy all of the claims. If the claims are adjudicated individually, the fund will run out before the claimants do.") (quoting 2 William D. Rubenstein, *Newberg on Class Actions* § 4:18 (5th ed.)); *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (noting, in case

- 12 -

alleging mismanagement of an ERISA plan, that "ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class") (citation omitted).

The Supreme Court has cautioned against the expansive use of the limited fund rationale under Rule 23(b)(1)(B), particularly where damages are at stake.  *See Ortiz v. Fibreboard Corp*., 527 U.S. 815, 845-47 (1999) (noting that "objectors to the collectivism of a mandatory subdivision (b)(1)(B) action have no inherent right to abstain" and that "[t]he legal rights of absent class members . . . are resolved regardless either of their consent, or, in a class with objectors, their express wish to the contrary").

Thus, consideration of the proposed classes under Rule 23(b)(1)(B) is improper because Plaintiffs do not seek recovery from a fund that is inadequate to cover all of their claims and, in any event, do not advance claims that are suitably considered under Rule 23(b)(1)(B)'s provisions to ensure that a complete remedy would be available to all class members in individual litigation.

### B.  The Monetary Relief Sought Precludes Rule 23(b)(2) Certification.

Rule 23(b)(2) certification also is improper because Plaintiffs primarily seek monetary relief.  Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23, Advisory Comm. Notes, 1996 Amend., Subdiv. (b)(2).  The Supreme Court has squarely held that monetary claims for individualized relief cannot satisfy Rule 23(b)(2).  *Dukes*, 564 U.S. at 360-61.  Courts in the Second Circuit have consistently enforced this holding.  *See, e.g., Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 28-29 (2d Cir. 2012) ("*Wal-Mart* teaches

- 13 -

that Rule 23(b)(2) does not authorize class certification when—despite the suitability of generalized injunctive or declaratory relief—each class member would [also] be entitled to an individualized award of monetary damages.") (citation omitted);  *Amara v. CIGNA Corp*., 775 F.3d 510, 519 (2d Cir. 2014) ("Class actions based on claims for individualized monetary relief—implicating the due process rights of absent class members, who need not be given notice and opt-out rights pursuant to Rule 23(b)(2)—are impermissible under" Rule 23(b)(2)); *Douglin v. GreatBancTr. Co*., 115 F. Supp. 3d 404, 414 (S.D.N.Y. 2015) (Noting that there are due process concerns where "the heart of plaintiff's claims for relief is the pursuit of monetary compensation" involving individualized claims and "plaintiffs' requested injunctive and declaratory relief . . . amount to no more than incidental remedies"); *see also Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1997) (explaining that "the underlying premise of the (b)(2) class – that the members suffer from a common injury that can be addressed by class-wide relief – begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries").

Here, even though the Complaint states (without explanation) that "injunctive and declaratory relief is among the predominant forms of relief sought in this case" (Compl. ¶¶ 241, 265, 289), as in *Dukes*, Grant and Walker seek substantial individualized relief in the form of monetary damages for loss of past and future income, wages, benefits, harm to personal and professional reputations, loss of "career fulfillment," humiliation, embarrassment, stress and anxiety, mental anguish, emotional pain and suffering, emotional distress, and "all other monetary losses."  Compl. at p. 73 ¶¶ I-L.  That list includes individualized compensatory and punitive damages more varied than those considered in *Dukes*.  *Id.* at ¶¶ L, M.  Plaintiffs' pursuit of these damages claims precludes Rule 23(b)(2) certification.  *See Dukes*, 564 U.S. at 360 ("at a

- 14 -

minimum, claims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule") (emphasis in original).

Furthermore, even if the Court found Plaintiffs' individualized claims for monetary relief to be merely incidental to the requested injunctive relief, which the Complaint makes clear they are not, the case is not properly brought under Rule 23(b)(2) because the proposed class includes former and future employees who lack standing to seek injunctive relief. *Dukes*, 564 U.S. at 365 ("about half the members of the class . . . [i.e., the former employees] have no claim for injunctive or declaratory relief at all"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("As the Supreme Court explained [in *Dukes*], only current employees have standing to seek injunctive relief"); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 623 (9th Cir. 2010), *overruled on other grounds,* 564 U.S. 338 (2011) ("class members who were no longer . . . employees at the time Plaintiffs' complaint was filed do not have standing to pursue injunctive or declaratory relief"). Grant and Walker seek declaratory and injunctive relief related to The Times' employment policies and practices on behalf of classes consisting of employees "who have been, are now, or will be employed by the Company." Compl. ¶¶ 224, 248, 272. The employees "who have been" or "will be" employed are not subject to The Times's policies and thus any threat of injury is "conjectural or hypothetical" and cannot support injunctive relief. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (opining that plaintiffs must demonstrate they are under threat of suffering "injury in fact" that is actual and imminent and it must also be "likely that a favorable judicial decision will prevent or redress the injury").

Finally, courts also are wary of certification outside Rule 23(b)(3) where the proposed class includes individuals who signed releases of claims upon their departure. Because individuals who signed releases "could be vulnerable to a claim that they breached their

severance, separation, or settlement agreements, . . . [they] may not wish to attack releases of employment claims, and should be permitted to make this decision on an individual basis." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 322 n.12 (S.D.N.Y. 2003).  A significant number of former Times Account Managers have elected to participate in voluntary buyouts and have signed general releases as a condition of their separation from the Company.  Those individuals should not be forced to participate in an action that would violate the terms and conditions of their agreement with The Times.  Instead, they should be afforded the opportunity to choose whether to participate in the present action – an option that is only available under the Rule 23(b)(3) framework.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion should be granted, and the Court should dismiss Grant's and Walker's claims of gender and equal pay discrimination pursuant to Fed. R. Civ. P. (12)(b)(6), and strike the class allegations pled under Rule 23(b)(1) and Rule 23(b)(2).

December 20, 2016

Respectfully submitted,


THE NEW YORK TIMES COMPANY
MARK THOMPSON
MEREDITH LEVIEN

By their attorneys,


*/s/ Gregory I. Rasin*
Gregory I. Rasin
Larissa R. Boz
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3410
Fax: (212) 969-2900
grasin@proskauer.com
lboz@proskauer.com

Mark W. Batten – *admitted pro hac vice*
PROSKAUER ROSE LLP
1 International Place
Boston, Massachusetts 02110
Tel: (617) 526-9600
Fax: (617) 526-9899
mbatten@proskauer.com
*Attorneys for Defendants*