UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ERNESTINE GRANT and MARJORIE WALKER, on :
behalf of themselves individually and on behalf of all :    1:16 CV 03175 (PKC)(DCF)
similarly situated persons, :
                                                              :    **ECF CASE**
                         Plaintiffs, :
:
  -against- :
:
THE NEW YORK TIMES COMPANY, MARK :
THOMPSON, and MEREDITH LEVIEN, :
:
                        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS GENDER AND EQUAL PAY ACT CLAIMS
AND TO STRIKE CERTAIN CLASS CLAIMS**

## TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION** ...................................................................................................................1

**ARGUMENT** ..........................................................................................................................1

    A.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Gender Discrimination. ...................................................................................................1

        1.    The Second Amended Complaint Fails to Meet the Required Pleading Standard for a Gender Discrimination Claim. ...............................1

        2.    Citations to "Sex-Plus" Cases Do Not Save the Complaint, Because Plaintiffs Do Not Allege a Sex-Plus Claim. ..................................4

        3.    Plaintiffs' Mention of the Union Study Cannot Save the Gender Claims. ...............................................................................................5

    B.    There is No Reason to Delay the Conclusion That Plaintiffs' Theories of Liability and the Relief Sought Preclude Certification Under Fed. R. Civ. P. 23(b)(1) or Fed. R. Civ. P. 23(b)(2). ........................................................6

        1.    Plaintiffs Cannot Rely on Rule 23(b)(1). ....................................................7

        2.    Plaintiffs Cannot Certify a Class Under Rule 23(b)(2). ..............................8

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amara v. CIGNA Corp.*,
　775 F.3d 510 (2d Cir. 2014) ................................................................................................9

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997) .............................................................................................................7

*Babineau v. Federal Express Corp.*,
　576 F.3d 1183 (11th Cir. 2009) ...........................................................................................8

*Blackwell v. Skywest Airlines*,
　245 F.R.D. 453 (S.D. Cal. 2007) .........................................................................................7

*Brown v. Coach Stores, Inc.*,
　163 F.3d 706 (2d Cir. 1998) ................................................................................................6

*Casa Orlando Apartments, Ltd. v. Fed. Natl. Mortgage Assn.*,
　624 F.3d 185 (5th Cir. 2010) ...............................................................................................8

*Gorzynski v. Jetblue Airways Co.*,
　596 F.3d 93 (2d Cir. 2010) ..................................................................................................4

*In re Polaroid ERISA Litig.*,
　240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................................7

*Littlejohn v. City of New York*,
　795 F.3d 297 (2d Cir. 2015) ................................................................................................2

*Marcus v. Leviton Mfg. Co.*,
　2016 U.S. App. LEXIS 16309 (2d Cir. Sept. 2, 2016) ................................................2, 3, 4

*Moultrie v. Carver Found.*,
　2016 U.S. App. LEXIS 17511 (2d Cir. Sept. 27, 2016) ...................................................2, 3

*Nationwide Life Ins. Co. v. Haddock*,
　460 Fed. App'x 26 (2d Cir. 2012) ......................................................................................10

*Offor v. Mercy Med. Ctr.*,
　2017 U.S. App. LEXIS 1013 (2d Cir. Jan. 20, 2017) ......................................................2, 3

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*,
　654 F.3d 618 (6th Cir. 2011) ...............................................................................................8

*Robinson v. Metro-North R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ................................................................................ 9, 10

*Schulte v. State of New York*,
   533 F. Supp. 31 (E.D.N.Y. 1981) ................................................................................ 7

*Tse v. UBS Financial Services, Inc.*,
   568 F. Supp. 2d 274 (S.D.N.Y. 2008) ........................................................................ 4

*Vega v. Hempstead Union Free School District*,
   801 F.3d 72 (2d Cir. 2015) ......................................................................................... 2

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 9, 10

*Wolf v. Time Warner, Inc.*,
   No. 09 Civ. 6549 (RJS), 2011 WL 856264 (S.D.N.Y. Mar. 3, 2011) ........................ 4

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ............ 8

**OTHER AUTHORITIES**

7AA Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* §
   1773 (3d ed. 2010) ..................................................................................................... 7

Fed. R. Civ. P. 23 ................................................................................................... passim

## INTRODUCTION

Despite two amendments to their Complaint since Defendants (collectively, "The Times") pointed out the deficiencies, Plaintiffs still fail to plead a gender discrimination claim that meets the required standard of plausibility.  Even in the introduction to their opposition brief ("Pl. Opp."), they characterize The Times as pursuing "young, white" customers and staff, and complain that the Advertising Department is becoming "younger and whiter," before finally claiming that women are paid less than men.  The Second Amended Complaint (the "Complaint" or "Compl.") offers no basis to believe that either of the Plaintiffs, or the broad gender class that they hope to represent, has been disadvantaged because of gender, and the allegations of gender discrimination and claims under the Equal Pay Act should be dismissed.

As to their improper class allegations, Plaintiffs primarily urge the Court to ignore the problems until they file a motion for class certification after discovery.  But there is no reason for delay.  The inapplicability of Rules 23(b)(1) and 23(b)(2) is patent on the face of the Complaint, and requires no additional facts.  The cases on which Plaintiffs rely that discourage early resolution of class certification have no relevance here, because The Times does not seek now to preclude class certification, only to clarify that Plaintiffs' eventual motion can seek certification solely under Rule 23(b)(3).  The Times' motion should be allowed.

## ARGUMENT

**A.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Gender Discrimination.**

**1.    The Second Amended Complaint Fails to Meet the Required Pleading Standard for a Gender Discrimination Claim.**

Plaintiffs begin by dismissing their pleading burden as "minimal," Pl. Opp. at 5, but the very case they cite actually requires that a complaint plead facts that "give *plausible support* to the reduced requirements that arise under McDonnell Douglas in the initial phase of a Title VII

litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis added). In other words, plaintiffs "must plausibly allege that [their gender] 'was a motivating factor in the employment decision.'" *Offor v. Mercy Med. Ctr.*, 2017 U.S. App. LEXIS 1013 (2d Cir. Jan. 20, 2017) (quoting *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 86 (2d Cir. 2015).[1]

Accordingly, the Second Circuit since *Littlejohn* and *Vega* has affirmed dismissals where, as here, the plaintiffs alleged insufficient facts to suggest that employment decisions were driven by discriminatory animus on the grounds alleged. In *Offor*, for example, the Second Circuit affirmed dismissal of a race and national origin claim even though the plaintiff alleged that similarly situated employees of a different race were better treated. *Id.* at *4. The Court disagreed that the comparators were "similarly situated," and affirmed the dismissal. *Id*. The plaintiff in *Moultrie v. Carver Found.*, 2016 U.S. App. LEXIS 17511, *3-4 (2d Cir. Sept. 27, 2016) similarly identified three white employees whom she claimed were better treated, but "failed to provide any factual allegations . . . as to how these employees were similarly situated . . . ."; the Second Circuit again affirmed dismissal. And in *Marcus v. Leviton Mfg. Co.*, 2016 U.S. App. LEXIS 16309 (2d Cir. Sept. 2, 2016), the Court found an age discrimination complaint wanting despite allegations that (a) the employer was terminating older employees and replacing them with younger hires; (b) other, younger employees had used profanity without consequence, while the plaintiff was fired for it; and (c) the plaintiff was replaced by a younger employee. *Id.* at*3-*6. None of these facts, the Court held, was sufficient to give rise to a plausible inference of age discrimination.

---

[1] Contrary to Plaintiffs' assertion that The Times has failed to identify the gender discrimination claims for which dismissal is sought, The Times made clear that the relief sought is dismissal of all claims of gender and equal pay discrimination, as stated in the preliminary statement and conclusion of The Times' opening Memorandum of Law at pages 2 and 16, respectively.

Since The Times first challenged the adequacy of the gender claims, Plaintiffs have twice amended their pleading, but the Second Amended Complaint still falls short. As noted in the opening brief, Plaintiffs' allegations continue mostly to append the word "gender" at the end of paragraphs whose only factual allegations relate to claimed age or race discrimination. *E.g.*, Compl. ¶¶100-104, 167, 211. Grant and Walker also expressly contend that they were treated less favorably than other female employees, which actively works against the inference that The Times was motivated to disfavor them by hostility to women. *Id*. ¶¶165-66, 209-10.

Plaintiffs now point to allegations concerning the former publisher of The Times' Style Magazine, Brendan Monaghan, but these allegations do not plausibly suggest an inference of gender discrimination either. Pl. Opp. at 6 (citing Compl. ¶¶92-95). Paragraphs 92 and 93 claim that Grant and Walker were not invited to parties at Monaghan's home, but they do not allege gender bias in those invitations; instead, they expressly allege that the invitees were "white" (¶92) and that "older employees" (¶93) were excluded. Paragraphs 94 and 95 allege that Mr. Monaghan hired mostly (younger, white) males and called them his "handsome men," but there is no allegation that Grant or Walker worked for Monaghan or that they were affected by any hiring decision he made.

Plaintiffs next vaguely allege that The Times' Chief Executive Officer, Mark Thompson, preferred "female subordinates . . . whom he could control," Pl. Opp. at 6. There is again no allegation that Thompson had anything to do with Grant or Walker, or that his alleged preferences with respect to his subordinates had any effect on the Plaintiffs at all.

Finally, Plaintiffs note that they allege they were "paid less than male peers." Pl. Opp. at 6. Like the allegations held inadequate in *Offor*, *Moultrie,* and *Marcus*, however, a mere difference in payment is not enough plausibly to allege an unlawful motive, because Plaintiffs

provide no facts to show that the male comparators are similarly situated in all relevant respects or that the motive for the difference was based on their gender. Just as "the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive," *Marcus*, 2016 U.S. App. LEXIS 16309, at *5, the mere fact that a female employee was paid less than a male employee (not to mention other female employees) does not plausibly indicate discrimination.

### 2. Citations to "Sex-Plus" Cases Do Not Save the Complaint, Because Plaintiffs Do Not Allege a Sex-Plus Claim.

Title VII does permit a plaintiff to pursue a "sex-plus" claim, as Plaintiffs next contend, but those cases are irrelevant here because Plaintiffs do not present a sex-plus claim. As explained in the lead case on which Plaintiffs rely, *Gorzynski v. Jetblue Airways Co.*, 596 F.3d 93 (2d Cir. 2010), a "sex-plus" claim asserts a theory based on a subset of the protected class. For example, an "age-plus-gender" claim might assert, as in *Gorzynski*, "that [the plaintiff] was treated differently because of her status as an older woman, rather than because of age or gender acting as independent factors." *Id*. at 109. The gender component of that claim cannot be defeated, *Gorzynski* holds, by pointing out that women under 40 were treated well. The other cases on which Plaintiffs rely merely echo that same holding. Pl. Opp. at 7. In *Wolf v. Time Warner, Inc.*, No. 09 Civ. 6549 (RJS), 2011 WL 856264, at *6 (S.D.N.Y. Mar. 3, 2011), the plaintiff was a woman over 40 who cited alleged mistreatment of another woman over 40, and identified three male lawyers who were allegedly given better assignments despite their advancing age. And in *Tse v. UBS Financial Services, Inc.*, 568 F. Supp. 2d 274, 292 (S.D.N.Y. 2008), the plaintiff conceded that her performance was poor, but alleged that her supervisor "treated low-performing females, and specifically plaintiff, differently than he treated low-

performing males." *Tse* accordingly is not a sex-plus case, like *Wolf* or *Gorzynski*; it is simply a gender case, and the question concerned whether the comparators were similarly situated.

Plaintiffs cannot rely on these cases because they do not bring a claim on behalf of a subset of a protected class. Instead, they purport to sue on behalf of a "Gender Class" consisting of "female employees who have been, are now or will be employed by the Company . . . as Account Managers." Compl. ¶272. The proposed Gender Class accordingly means to include female Account Managers regardless of their age (or race, for that matter). The Complaint similarly proposes an Age Class that includes "older employees" without regard to gender, and a Race Class including Black employees regardless of gender or age. Compl.¶¶248, 224.

Plaintiffs presumably made these choices because a Gender Class that includes women of all ages and races would be larger than a class consisting only of older women, or older Black women. But the Complaint's definitions of these classes make clear that they are not alleging discrimination merely against older women, but against women regardless of their other protected characteristics. Having made that choice, they must accept the consequences of the claim they chose to make, and "plausibly allege" not merely that The Times discriminated against a subset of female Account Managers, but against female Account Managers of varying ages and races. Plaintiffs cannot have it both ways.

### 3.   Plaintiffs' Mention of the Union Study Cannot Save the Gender Claims.

By amendment, Plaintiffs added several paragraphs to the Complaint alleging that a study by the Newspaper Guild of New York found disparities in pay between several sets of protected classes at The Times. Compl. ¶¶32-36. As relevant to this motion, the Complaint alleges that the study found pay gaps between male and female employees, which increase with tenure, and that women are "overrepresented" in lower-paying jobs. *Id*. ¶¶35-36.

Plaintiffs misunderstand the fault in their reliance on these allegations. The problem is not, as they argue, that the study may turn out to be unreliable, Pl. Opp. at 8; the problem is that they allege no facts to suggest that the disparities they claim are the product of discrimination, or for that matter that *any* Times policy brought about these claimed differences in pay. Only a well-pleaded causal connection between the pay statistics and a Times policy would assist the Plaintiffs in stating a claim, and they offer none.

In *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998), the plaintiff similarly sought to bolster her race discrimination complaint with EEOC statistics showing that "the overall percentage of minority employees at Coach headquarters dropped from 30% to 11%, while in 1995 the New York City retail trade employed almost 25% minority employees." The Second Circuit held the allegations insufficient and affirmed dismissal of the complaint because "Brown does not connect these general statistics to any Coach policy." *Id*. Even though Brown had alleged "that Coach's training and promotion policies deliberately keep minorities from being promoted," those allegations were "utterly disconnected" from the statistics. *Id*. Plaintiffs here similarly offer no facts to suggest that the statistical disparities they claim were brought about by any policy of The Times, let alone by any discriminatory motive.

**B.      There is No Reason to Delay the Conclusion That Plaintiffs' Theories of Liability and the Relief Sought Preclude Certification Under Fed. R. Civ. P. 23(b)(1) or Fed. R. Civ. P. 23(b)(2).**

The Times does not seek, as Plaintiffs insist, to "preemptively terminate the class aspects" of this case. Pl. Opp. at 9 (quoting *Blagman v. Apple Inc.*, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013)). The Times fully expects that Plaintiffs will move to certify their proposed classes at some point, and does not seek to preclude Plaintiffs from doing so. As a result, none of Plaintiffs' cases addressing early disposition of class certification have any relevance here. Pl. Opp. at 9-10. This motion merely concerns the appropriate procedural rule

that should apply when Plaintiffs *do* seek class certification, because two of the rules they describe are inapplicable here, as a matter of law and on the face of the Complaint.  Here as in *Schulte v. State of New York*, 533 F. Supp. 31 (E.D.N.Y. 1981), "Plaintiffs assert that all of the prerequisites for a class action exist under FRCP 23(b)(1), (2) and (3). Such an indiscriminate argument demonstrates a lack of understanding of the rather exacting requirements necessary for class certification under either 23(b)(1), (b)(2), or (b)(3)."  Discovery will not change Plaintiffs' obligation to proceed solely under Rule 23(b)(3), and that restriction is ripe for resolution now.

### 1. Plaintiffs Cannot Rely on Rule 23(b)(1).

Plaintiffs' response as to Rule 23(b)(1) simply ignores most of The Times' argument.  Pl. Opp. at 12-14.  The Complaint's Rule 23(b)(1) allegations fail primarily because that Rule applies only in cases where separate actions by individual parties would "create a risk of . . . inconsistent adjudications," that is, "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 74 (S.D.N.Y. 2006); *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).[2]  As The Times has explained, the mere possibility that The Times might be held liable to some individuals but not others does not satisfy the "inconsistent adjudications" requirement.[3]  Plaintiffs do not respond to these cases.

---

[2] This is the applicable test for actions under Rule 23(b)(1)(A); Plaintiffs have disclaimed any reliance on Rule 23(b)(1)(B).  Pl. Opp. at 12 n.2.

[3] See Opening Brf. at 11 (citing *Bacon v. Honda of Am. Mfg.,* 205 F.R.D. 466, 483 (S.D. Ohio 2001) (denying Rule 23(b)(1) certification in pattern and practice discrimination suit brought by African-American manufacturing employees), *aff'd*, 307 F.3d 565 (6th Cir. 2004); *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 465 (S.D. Cal. 2007); 7AA Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1773 (3d ed. 2010) (explaining that the rule "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts").

Several courts have held, moreover, that Rule 23(b)(1)(A) simply does not apply in cases seeking money damages. *See, e.g.*, *Babineau v. Federal Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) ("Rule 23(b)(1)(A) certification [is] improper when plaintiffs request[ ] both compensatory damages and injunctive relief"); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Rule 23(b)(1)(A) certification requires more, however, than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts . . . . Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages.") (internal quotations and citations omitted), *amended by* 273 F.3d 1266 (9th Cir. 2001).

Plaintiffs argue in response that they seek both injunctive relief and money damages, but that is beside the point; the question is whether the injunctive relief they seek, if pursued in separate actions, might impose contradictory requirements on The Times. That outcome is not plausible here, where the only possibilities are that the requested injunction will be granted, or it will be denied. Such possibilities do not satisfy Rule 23(B)(1)(A). *See, e.g.*, *Casa Orlando Apartments, Ltd. v. Fed. Natl. Mortgage Assn.*, 624 F.3d 185, 197-98 (5th Cir. 2010); *cf. Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 633 (6th Cir. 2011) ("the fact that the district court found BCBSM liable to the Fund for a fiduciary breach, while another court might find BCBSM owes no duty to a different ASC client, does not create the risk required under this subsection"). This case is not suitable for certification under Rule 23(b)(1), and there is no need for delay or discovery to confirm that result. Plaintiffs' allegations under that Rule accordingly should be stricken.

### 2. Plaintiffs Cannot Certify a Class Under Rule 23(b)(2).

Certification is available under Rule 23(b)(2) only in cases seeking injunctive relief. Where individual damages are sought as well, Rule 23(b)(2) does not apply, as the Supreme

Court has expressly held. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011).[4] The Court went on to hold that because Wal-Mart might assert individual defenses to the statutory discrimination claims, "the necessity of that litigation will prevent backpay from being 'incidental' to the classwide injunction, [so that] respondents' class could not be certified even assuming, arguendo, that 'incidental' monetary relief can be awarded to a 23(b)(2) class." *Id*. at 367.

Plaintiffs respond by trying to create some dispute about whether their damages claims predominate over their demand for an injunction, and urge the Court to apply some kind of "balancing test" to decide the relative importance of their demands for injunctive relief and damages. That question is irrelevant, however, as *Dukes* makes clear. Struggling to locate authority for their position, Plaintiffs rely on an older Second Circuit decision[5] which they describe as "abrogated on other grounds" by *Dukes*, but in fact *Dukes* directly rejects the "ad hoc balancing test" that Plaintiffs propose. Pl. Opp. at 15. Since *Dukes*, the Second Circuit has applied the Supreme Court's interpretation of the Rule, and even though The Times cited those more recent cases in the opening brief, Plaintiffs make no effort to distinguish or even acknowledge them. *See, e.g.*, *Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) ("Class actions based on claims for individualized monetary relief—implicating the due process rights of absent class members, who need not be given notice and opt-out rights pursuant to Rule 23(b)(2) —are impermissible under" Rule 23(b)(2)); *Nationwide Life Ins. Co. v. Haddock*, 460 Fed.

---

[4] "One possible reading of [Rule 23(b)(2)] is that it applies only to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all. We need not reach that broader question in this case, because we think that, at a minimum, claims for individualized relief (like the backpay at issue here) do not satisfy the Rule. . . . [Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."

[5] *Robinson v. Metro-North R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001).

App'x 26, 28-29 (2d Cir. 2012) ("*Wal-Mart* teaches that Rule 23(b)(2) does not authorize class certification when—despite the suitability of generalized injunctive or declaratory relief—each class member would [also] be entitled to an individualized award of monetary damages.") (citation omitted).

In fact, the Second Circuit in *Haddock* specifically held that *Dukes* had "significantly altered the applicable analysis . . . under Rule 23(b)(2)" and that the reliance of the district court there on *Robinson* was no longer valid. 460 Fed. App'x at 29. Plaintiffs' reliance here on *Robinson*, and their description of the balancing test approach as unaffected by *Dukes*, blatantly misrepresents both the Supreme Court's holding and the Second Circuit's response in decisions since then.

As with Plaintiffs' claims under Rule 23(b)(1), there is no need for discovery, and no need to await a motion for class certification, to resolve the applicability of Rule 23(b)(2) in this case; Plaintiffs' claims, on the face of the Complaint, establish the inapplicability of the Rule.

February 10, 2017                                  Respectfully submitted,

*/s/ Gregory I. Rasin*
Gregory I. Rasin
Larissa R. Boz
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3410
grasin@proskauer.com
lboz@proskauer.com

Mark W. Batten – *admitted pro hac vice*
PROSKAUER ROSE LLP
1 International Place
Boston, Massachusetts 02110
Tel: (617) 526-9600
mbatten@proskauer.com
*Attorneys for Defendants*