UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ERNESTINE GRANT and MARJORIE WALKER, on behalf of themselves individually and on behalf of all similarly situated persons,

Plaintiffs,

16-cv-03175 (PKC)

-against-

MEMORANDUM AND ORDER

THE NEW YORK TIMES COMPANY, MARK THOMPSON, in his individual and professional capacities, and MEREDITH LEVIEN, in her individual and professional capacities,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiffs Ernestine Grant and Marjorie Walker, on behalf of themselves and all similarly situated persons, bring this action for employment discrimination and equal pay violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206 et seq. ("EPA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), the Civil Rights Act of 1871, 42 U.S.C. § 1981 ("Section 1981"), the New York Equal Pay Law, N.Y. LAB. L. § 194 ("EPL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the New York State Human Rights Law, N.Y. EXEC. L. § 290 et seq. ("NYSHRL").

Ms. Grant and Ms. Walker allege that defendants The New York Times Company ("The Times"), Mark Thompson and Meredith Levien, both executives at The Times,

discriminated against them because of their race, age, gender, and for Ms. Walker, her disability. Ms. Grant and Ms. Walker are currently employed by The Times.

Defendants have moved to dismiss the Title VII gender discrimination claims, the Equal Pay Act claims and the corresponding state and city law claims in the Second Amended Complaint ("SAC"). Defendants do not seek dismissal of the race, age or disability claims nor do they seek dismissal of plaintiffs' retaliation claims. Defendants also move to strike plaintiffs' class claims from the SAC under Rules 23(b)(1) and 23(b)(2), Fed. R. Civ. P. For reasons that will be developed, defendants' motion to dismiss will be granted and defendants' motion to strike certain class action allegations will be denied.

BACKGROUND

Plaintiffs Ernestine Grant, aged 62, and Marjorie Walker, aged 61, are black female employees of The Times. (SAC ¶¶ 48-49.) Ms. Grant and Ms. Walker are Account Managers ("AMs") in The Times' Advertising Department. (SAC ¶¶ 1, 147, 172.) AMs are responsible for selling print and digital advertisements, and receive compensation based in part on how much advertising they sell. (SAC ¶ 192.)

Plaintiff Ernestine Grant began her employment at The Times as an AM and has received positive performance reviews, "substantial bonuses," and maintains solid relationships with her clients. (SAC ¶¶ 147-157.) The SAC does not allege how long Ms. Grant has been working at The Times.

Plaintiffs allege that while Ms. Grant sought promotion commensurate with her experience, she was denied those opportunities, which were instead given to "younger, white individuals instead." (SAC ¶ 161.) Plaintiffs point to two younger white male AMs who were allocated higher revenue accounts than Ms. Grant, despite Ms. Grant's superior experience and

qualifications.  (SAC ¶¶ 163-164.)  Additionally, plaintiffs provide the example of Maria Eliason, a younger white female AM who had been allocated higher revenue accounts than Ms. Grant and was selected for promotion to Advertising Director in 2016.  (SAC ¶ 165.)  Ms. Grant was offered a buyout, but did not accept it.  (SAC ¶¶ 169-170.)

Plaintiff Marjorie Walker began her career with The Times in 2008 as a Telesales Representative in Live Entertainment, and in 2010 was promoted to AM on the Fashion & Jewelry team.  (SAC ¶¶ 171-172.)  She received a laudatory performance review in 2012.  (SAC ¶¶ 173-179.)  In 2013, her supervisor, Amanda Smith, who had been hired by defendant Meredith Levein, told a client in Ms. Walker's presence, "[o]h, Marjorie's a tough girl."  (SAC ¶¶ 180-183.)  Soon thereafter, Ms. Smith filed an internal arbitration against Ms. Walker, accusing her of insubordination and poor work product.  (SAC ¶ 184.)  Ms. Walker told Ms. Smith that she found the "tough girl" comment to be offensive and racially charged, after which Ms. Smith attempted to withdraw the arbitration against Ms. Walker.  (SAC ¶¶ 184-186.)  Ultimately the arbitration was dismissed and Ms. Walker proposed that she be transferred to another advertising team.  (SAC ¶¶ 187-89).  She sought a transfer from the Fashion & Jewelry team and was assigned to the "Help Wanted" advertising team, which she was told was the only position available.  (SAC ¶¶ 189-190.)  Plaintiff alleges that the reassignment was a demotion, and had a direct, detrimental impact on Ms. Walker's compensation and career prospects.  (SAC ¶¶ 191-193.)

In or around September 2011, Ms. Walker was diagnosed with multiple myeloma, a form of cancer.  (SAC ¶ 200.)  Ms. Walker requires accommodations in order to treat her disability, including time off for medical appointments and recovery.  (SAC ¶ 203.)  Plaintiff

alleges that The Times' management and staff are aware of Ms. Walker's medical condition. (SAC ¶ 202.)

In December 2015, Ms. Walker was given a negative performance review, with an overall rating of "[n]eeds considerable improvement." (SAC ¶¶ 212-13.) In that review, Ms. Walker's supervisor, Ruth Flaig, gave Ms. Walker "scathing" critiques of her work. (SAC ¶ 214.) Ms. Walker was subsequently offered a buyout which was available to employees in a number of divisions at The Times including the Advertising department. (SAC ¶¶ 212, 215.) After Ms. Walker did not respond to the buyout offer, she, along with another older black AM, attended a meeting in which they were told that at the end of an ongoing restructuring, "only one of the two of them" would have a position. (SAC ¶ 216-217.) Ms. Walker and the other AM understood that conversation to be a directive for at least one of them to take the buyout. (SAC ¶ 219.) Ms. Walker did not accept the buyout, does not allege that any adverse consequences befell her as a result of refusing the buyout, and continues to work at The Times.

Ms. Walker alleges that she was repeatedly passed over for promotion to Advertising Director, and that while she was denied such an opportunity, promotions were routinely given to "younger, white individuals instead." (SAC ¶ 206.) Ms. Walker alleges that "younger white individuals" at the same level as Ms. Walker were paid more than she was. (SAC ¶ 207.)

Specifically, Ms. Walker alleges that a younger white male employee was assigned higher revenue accounts than she was, and was subsequently promoted to Account Director. (SAC ¶ 208.) Ms. Walker alleges that a young white female employee was also allocated higher revenue accounts than Ms. Walker, and that her compensation is "substantially" higher than Ms. Walker's. (SAC ¶ 209.) Finally, Ms. Walker alleges that three other white

employees (two male, one female), earn "far more" than Ms. Walker due to "unequal distribution" of higher revenue accounts to those individuals. (SAC ¶ 210.)

Plaintiffs allege that since defendant Mark Thompson was appointed as Chief Executive Officer ("CEO") of The Times in 2012, he has permitted and encouraged a "culture of discrimination" at all levels of The Times, including its Advertising Department. (SAC ¶¶ 2-3.) Mr. Thompson previously served as the Director-General of the British Broadcasting Corporation ("BBC") and plaintiffs allege that he "endorsed and perpetuated a system of gender discrimination while at the helm of the BBC." (SAC ¶¶ 4, 13.) Plaintiffs also provide examples of allegedly discriminatory practices that were committed during Mr. Thompson's tenure at the BBC. (SAC ¶¶ 4-9, 13-16.)

Shortly after Mr. Thompson began working at The Times, his first major appointment of a business-side executive was defendant Meredith Levien, who eventually assumed the role of Chief Revenue Officer. (SAC ¶ 19.) Plaintiffs allege that Ms. Levien sought to foster a workforce filled with "fresh faces," meaning younger, white employees without families. (SAC ¶ 20.)

Plaintiffs allege that since Ms. Levien's appointment, "nearly all" of the nonwhite Advertising Directors have been pushed out, and that Ms. Levien's alteration of The Times' standard pay scale system worked to create discriminatory wage gaps in favor of younger and white employees. (SAC ¶¶ 25-31.) Plaintiffs point to the ouster of Executive Editor Jill Abramson in 2014, and her replacement with a man as an illustrative example of the gender inequality endemic to The Times. (SAC ¶¶ 11-12.)

To support certain of their allegations, plaintiffs rely on allegations in other lawsuits, one alleging gender discrimination and the other alleging age and race discrimination.

(SAC ¶¶ 23-24.)  They also cite a report by the Newspaper Guild of New York ("the Guild Report") that allegedly found that black and Hispanic employees at The Times earn only 89% and 84%, respectively, of what white employees earn (SAC ¶¶ 33-34) and that women at The Times receive relatively lower wages as compared to men.  (SAC ¶ 35.)  They also rely on a Women's Media Center Study ("the Study"), which purportedly showed that The Times had the largest gender pay gap of any of the top ten most widely circulated newspapers.  (SAC ¶ 12.)  Plaintiffs also allege that only four out of the fourteen members of the board of Directors are women, and that Ms. Levien is the sole female member of the ten person Executive Committee and The Times.  (SAC ¶ 9.)

Plaintiffs allege that the Advertising Division, the division in which they are employed, receives its mandate and general direction from Mr. Thompson.  (SAC ¶¶ 131-141.)  Mr. Thompson attended annual meetings in the Advertising Division in which he put forth his vision and ideas for The Times' advertising initiatives.  (Id.)  Ms. Levien allegedly carries out Mr. Thompson's vision for the Advertising Division, which, according to plaintiffs, is discriminatory and results in disparate treatment of women, minorities, and older employees.  (SAC ¶¶ 136-142.)  For instance, plaintiffs allege that Ms. Levien, in carrying out Mr. Thompson's goals, began, in 2013, requiring that employees in the Advertising Division obtain an Interactive Advertising Bureau ("IAB") digital media sales certification by taking an exam.  (SAC ¶ 142.)  While this requirement eventually became a "recommendation," plaintiffs allege that older employees were effectively required to take the exam, while "younger, white" employees generally did not take the exam and suffered no negative repercussions for failing to do so.  (SAC ¶¶ 144-146.)

Another episode allegedly illustrating the discriminatory practices at The Times was that Brendan Monaghan, then Senior Vice President of Advertising and Publisher of "T: The New York Times Style Magazine," limited all but one of his Account Manager hires to white men under the age of 30, whom he allegedly referred to as his "handsome men."  (SAC ¶¶ 92-94.)

Advertising staff allegedly raised issues of unfair treatment for women, people of color, and older employees at Advertising Diversity Meetings with Michael Golden, the Vice Chairman of The Times, and Matthew Hardon, a Vice President of Human Resources at The Times.  (SAC ¶ 99.)  Ms. Grant and Ms. Walker allegedly complained at those meetings about the assignment of low-revenue accounts and positions based on race, gender, and age.  (SAC ¶ 100.)  Other employees allegedly complained that older employees of color were treated less favorably than younger, white employees.  (SAC ¶¶ 101-105.)  Vice Chairman Golden allegedly ignored these complaints and stopped scheduling Advertising Diversity meetings.  (SAC ¶¶ 106-107).

DISCUSSION

I. Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 555).  In considering a Rule 12(b)(6) motion to dismiss, all

non-conclusory factual allegations are accepted as true, see id. at 678-79, and all reasonable inferences are drawn in favor of the plaintiffs. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

In employment discrimination cases, the Iqbal plausibility standard applies in conjunction with the pleading standards set forth in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002). See Gillman v. Inner City Broad. Corp., No. 08 cv 8909 (LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("The Iqbal plausibility standard applies in conjunction with employment discrimination pleading standards . . . Iqbal was not meant to displace Swierkiewicz's teachings about pleading standards for employment discrimination claims because in Twombly, which heavily informed Iqbal, the Supreme Court explicitly affirmed the vitality of Swierkiewicz."); Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike." (internal quotation marks and citations omitted)).

At the pleading stage, Swierkiewicz teaches that a plaintiff is not required to come forth with allegations sufficient to make a *prima facie* case of employment discrimination or to satisfy the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Swierkiewicz, 534 U.S. at 510-11; see also Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam). Rather, "a complaint must include . . . a short and plaint statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512 (internal quotation marks omitted). "The facts required by Iqbal to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation."

Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). Accordingly, to overcome a Rule 12(b)(6) motion to dismiss in an employment discrimination case, a complaint must give fair notice of the basis of the plaintiff's claim and the claims must be facially plausible.

    a. Title VII and Equal Pay Act.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin," but it does not encompass claims based on general animus or hostility. 42 U.S.C. § 2000e-2(a). At the pleading stage, a complaint must allege the essential elements of an employment discrimination claim – that plaintiff suffered discrimination on the basis of protected status that resulted in an "adverse employment action." Patane, 508 F.3d at 112. To qualify as "adverse," an action must "cause a 'materially adverse change in the terms and conditions of employment,' and not just 'mere inconvenience.'" Id. (quoting Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005)).

A plaintiff is required to set forth factual circumstances from which discriminatory motivation for adverse employment action can be inferred. Id. An inference of discrimination can arise from circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge" or "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." Littlejohn, 795 F.3d at 312-13 (internal quotation marks omitted).

To state a valid claim under the Equal Pay Act, 29 U.S.C. § 206(d), a plaintiff must allege that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3)

the jobs are performed under similar working conditions.  EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254-55 (2d Cir. 2014).  The jobs compared must be "substantially equal" with common duties and content.  Id. at 255 (citing Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001)).

A claim of unequal pay for equal work under Title VII is generally analyzed under the same standards used for a claim brought under the EPA.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  However, a Title VII plaintiff "must also produce evidence of discriminatory animus in order to make out a *prima facie* case of intentional sex-based salary discrimination."  Id. at 113 (citing Aldrich v. Randolph Cent. School Dist., 963 F.2d 520, 528 (2d Cir. 1992)).

i. Ms. Grant.

Ms. Grant alleges that despite her excellent performance over the years, she was passed over for promotion to Advertising Director in part because of her gender.  (SAC ¶¶ 158, 167.)  She also alleges that she suffered adverse employment actions, in the form of low revenue account assignments and a buyout offer, because of her gender.  (SAC ¶¶ 158-170.)  Plaintiffs point to two younger white male AMs who were allocated higher revenue accounts than Ms. Grant, despite Ms. Grant's superior experience and qualifications.  (SAC ¶¶ 163-164.)  Neither of these younger males were alleged to have been promoted to Advertising Director.  Ms. Grant alleges that Maria Eliason, a younger white female AM who had been allocated higher revenue accounts than Ms. Grant and was selected for promotion to Advertising Director in 2016.  (SAC ¶ 165.)  The promotion of a member of the same protected group, a female, undermines the premise of Ms. Grant's gender discrimination claim.  With regard to pay, Ms. Grant alleges that

because of the unequal distribution of high revenue accounts, six individuals—three of whom are females—earned far in excess of her.  (SAC ¶¶ 163-65.)

With regard to Ms. Grant's various gender discrimination claims, the SAC does not "assert nonconclusory factual matter sufficient to 'nudge[ ] [its] claims . . . across the line from conceivable to plausible.'"  EEOC, 768 F.3d at 254 (quoting Iqbal, 556 U.S. at 680).  It is implausible that The Times' decision not to promote Ms. Grant to Advertising Director was caused by animus towards her as a woman.  See Patane, 508 F.3d at 111 ("The *sine qua non* of a gender-based discriminatory action claim . . . is that the discrimination must be because of sex.") (internal quotation marks omitted); Marcus v. Leviton Mfg. Co., 661 F. App'x 29, 32 (2d Cir. 2016) (summary order) ("A plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality.") (quoting Littlejohn, 795 F.3d at 310-11).

Throughout the section of the complaint exploring Ms. Grant's claims of disparate treatment and failure to promote, plaintiffs allege only that younger and white employees were disproportionately promoted to Advertising Directors.  (See, e.g., SAC ¶¶ 159-160.)  Only after explaining that both male and female AMs were allocated higher revenue accounts, and substantiating Ms. Grant's failure to promote claim by providing a single example of a female employee who was promoted over her, does the complaint allege in a conclusory manner that Ms. Grant was denied opportunities because of her "age, race and/or gender."  (SAC ¶¶ 158-170.)  Plaintiffs' complaint does not allege sufficient factual circumstances from which a gender-based discrimination can be inferred.  See Patane, 508 F.3d at 112.  Similarly, there is an insufficient factual allegation of the skill, effort, responsibility and working conditions of those males to whom Ms. Grant's pay is compared (whether comparators are identified by name or in a survey or study) to nudge the equal pay claim over the line of plausibility.

ii. Ms. Walker.

Ms. Walker also alleges that she was passed over for promotion to Advertising Director, and was denied opportunities that were given instead to "younger, white individuals" because of her gender. (SAC ¶¶ 204-206, 211.) Plaintiffs allege that "younger white individuals at the same level as Ms. Walker were paid compensation far in excess of her own." (SAC ¶ 207.)[1] Ms. Walker alleges that she was promoted to Account Manager on the Fashion & Jewelry team in about 2010 and was praised for her work. (SAC ¶¶ 171-73.) She further alleges she was given the lowest revenue accounts during her time in the Fashion & Jewelry Department, with higher revenue accounts assigned to "her younger, white colleagues." (SAC ¶¶ 179, 206.) Notably, she does not allege the gender of the individuals to whom the higher revenue accounts were assigned. She alleges that a young, white, male AM was given higher revenue accounts and promoted to Account Director. (SAC ¶ 208.) She also alleges identifies several other colleagues including Caroline Boccarosse, Maggie Kiselick, Mark Lloyd and Adam Hargis who allegedly make more than she does. (SAC ¶¶ 209-10.)

One of Ms. Walker's supervisors, Ruth Flaig, wrote negatively of Ms. Walker's performance on the job. (SAC ¶ 214.) At some point thereafter, Ms. Walker was offered a buyout which she did not accept. (SAC ¶¶ 215-16.) Another of Ms. Walker's female supervisors, Amanda Smith, who had been hired by Ms. Levien, referred to her in the presence of a client in the following manner: "Oh, Marjorie's a tough girl." (SAC ¶ 182.) Ms. Walker characterizes this remark as "racially charged, demeaning, and downright humiliating . . . ." (SAC ¶ 183.) When she sought a transfer to another advertising team, she was told that the only available position was on the "Recruitment" or "Help Wanted" team. (SAC ¶ 190.) She viewed

[1] In addressing Ms. Walker's claims, the Court incorporates its discussion of overlapping or similarly worded allegations made on behalf of Ms. Grant.

this position as a demotion and alleges that "older Black employees" have been steered to that low revenue team. (SAC ¶ 194.)

Ms. Smith's "tough girl" comment does not betray an animus based upon gender. "[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998) (summarizing conclusion of Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994)); Portee v. Deutsche Bank, No. 03 cv 9380 (PKC), 2006 WL 559448, at *13 (S.D.N.Y. Mar. 8, 2006). Nor does the complaint allege any causal nexus linking Ms. Smith's remark to any alleged adverse employment actions. See Woodard v. TWC Media Sols., Inc., No. 09 cv 3000 (BSJ) (AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011), aff'd sub nom Lawless v. TWC Media Sols., Inc., 487 F. App'x 613 (2d Cir. 2012); DeLuca v. Sirius XM Radio, Inc., No. 12 cv 8239 (CM), 2017 WL 3671038, at *18 (S.D.N.Y. Aug. 7, 2017).

Also, the fact that both Ms. Flaig and Ms. Smith are female weakens Ms. Walker's claim. A member of the same protected group may hold a discriminatory animus against other members of that group but, depending upon the context, the inference may become implausible. White v. Pacifica Found., 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013) (collecting cases); Fosen v. The New York Times, No. 03 cv 3785 (KMK) (THK), 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006) (collecting cases).[2] In the context of the facts set forth in the complaint which allege discrimination in favor of younger white employees, many of whom are female, the

[2] As will be discussed, this case does not allege "sex-plus" discrimination where a person may have animus towards members of a group with a combination of particular characteristics. The complaint that Ms. Grant and Ms. Walker bring alleges class claims that are specific to single characteristics, e.g. a "Race Class," a "Gender Class" and an "Age Class." Insofar as it relates to Ms. Smith's "tough girl" remark, there is no allegation in the complaint that Ms. Smith or The Times exhibited discriminatory animus towards women who were tough or strong.

inference that Ms. Flaig's performance review and Ms. Smith's comment were both motivated by a discriminatory animus against Ms. Walker because she is a woman is weak.

Similarly, the negative performance review by Ms. Flaig even when followed by a buyout offer made, according to the complaint, "to a number of divisions, including to the Advertising [D]ivision," (SAC ¶ 212) does not support an inference of discriminatory animus. As used in the complaint, the Court construes the term buyout to mean a program whereby pay and/or benefits to which the employee would not otherwise be entitled are exchanged for the employee's voluntary separation from the company. The Court comfortably concludes that the offering of a buyout to all employees of the Advertising Division does not support an inference of discrimination based upon gender. The additional comment by Ms. Walker's supervisor that she was "not telling either [Ms. Walker or another AM] to take the buyout" but wanted to remind them that it was there, did not make the buyout offer coercive or a de facto firing. Ms. Walker did not accept the offer and no adverse consequences are alleged to have ensued. Ms. Grant similarly alleges no adverse consequences stemming from her failure to accept a buyout offer.

The Court does not consider the allegations of the complaint in isolation but considers the totality of the incidents, comments and circumstances alleged throughout the complaint and concludes that Ms. Grant and Ms. Walker have not adequately alleged a gender discrimination or pay discrimination claim against The New York Times. Ms. Grant and Ms. Walker's race and age claims and Ms. Walker's disability claim, as to which no motion has been made, all survive.

    iii.   <u>This is not a "Gender-Plus" case.</u>

Plaintiffs cite cases involving allegations of gender-plus discrimination where the discriminatory animus may be aimed at, for example, women over 40 or women who have

children or are single. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 109 (2d Cir. 2010) (holding that plaintiff plausibly alleged claims of age and age-plus-gender discrimination where comparators were men and younger women). But the SAC does not allege gender-plus-age discrimination. The SAC makes no specific references to any age-plus-gender claims, and plaintiffs seek to certify an "Age Class" of "older employees," male and female, a separate "Gender Class," consisting of "female employees" of all ages, and a "Race Class" of black employees, male and female, older and not. (SAC ¶¶ 224, 248, 272.) The inclusion of an allegation that there was discrimination on the basis of "age, race, and/or gender," (see, e.g., SAC ¶ 167) is not the equivalent of alleging a claim based upon the unique combination of two or more factors. Because these plaintiffs have alleged separate putative Age, Gender and Race Classes which is inconsistent with a gender-plus claim, their complaint does not give "fair notice of the basis" for gender-plus discrimination claims. Swierkiewicz, 534 U.S. at 514; Rule 8, Fed. R. Civ. P.

      b. New York Human Rights and Equal Pay Laws.

Plaintiffs have asserted claims under the New York State Human Rights Law, N.Y. EXEC. L. § 290 et seq., against all defendants for gender discrimination and against Mr. Thompson and Ms. Levien for aiding and abetting that gender discrimination. Plaintiffs also bring claims under the New York Equal Pay Law, N.Y. LAB. L. § 194. Claims brought under the EPL are analyzed using the same standards used to consider a federal EPA claim. Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015) (summary order). Similarly, "[e]mployment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII." Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 316 n. 2 (2d Cir. 1999). Thus the outcome of plaintiffs' NYSHRL and EPL discrimination claims follows

that of their Title VII and EPA claims. Id.; Talwar, 610 F. App'x at 31. Therefore, plaintiffs' NYSHRL gender discrimination and New York EPL claims are also dismissed.

c. New York City Human Rights Law.

Finally, plaintiffs have asserted claims under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., against all defendants for gender discrimination and against Mr. Thompson and Ms. Levien for aiding and abetting that gender discrimination. Section 8–107(1)(a) of the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice" for an employer to discriminate against any person "in compensation or in terms, conditions or privileges of employment" because of "actual or perceived . . . gender . . . ." N.Y.C. Admin. Code § 8–107(1)(a)(3). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims," and "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013); Talwar, 610 F. App'x at 31. "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." Mihalik, 715 F.3d at 110 (internal quotation marks omitted).

Although the NYCHRL is to be interpreted broadly, it is not a "general civility code." Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 40 (1st Dep't 2009). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Mihalik, 715 F.3d at 110. In the present case, no facts, arguments or theories are advanced with respect to plaintiffs' NYCHRL claim different from those advanced in support of the other gender and equal pay claims. Nor have plaintiffs provided any argument as to how this

NYCHRL claim should be analyzed differently. Nevertheless, even under the more liberal standards of the NYCHRL, plaintiffs' claims fail. As the Court has already discussed, nothing in the complaint plausibly demonstrates that plaintiffs were discriminated against *because of* their gender, or that any of the conduct alleged in the complaint was motivated by gender-based animus. Therefore, plaintiffs' claims under the NYCHRL are dismissed insofar as they allege discrimination or a denial of equal pay based on gender.

II. Motion to Strike Class Action Allegations.

Plaintiffs' complaint includes multiple class allegations, and alleges that the putative class satisfies the requirements of Rule 23(a), Fed. R. Civ. P., along with the requirements of Rules 23(b)(1), (b)(2), and (b)(3). (See, e.g., SAC ¶¶ 234-245.) Defendants have moved to strike plaintiffs' claims under Rules 23(b)(1) and (b)(2), arguing that they fail "as a matter of law" and that if the putative class were to be certified at all, it could only do so pursuant to Rule 23(b)(3). (Defs.' Mem. 2.)

"[M]otion[s] to strike class allegations . . . [are] . . . disfavored because [they] require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) (quoting Chenesky v. N.Y. Life Ins. Co., No. 07 cv 11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)). But see Rogers v. Capital One Servs., LLC, No. 10 cv 398 (VLB), 2011 WL 873312, at *7 (D. Conn. Feb. 19, 2011), aff'd 447 F. App'x. 245 (2d Cir. 2011) (holding that a Court can, in its discretion, grant a motion to strike and order deletion of class claims where the basis for the motion to strike is distinct from the issues that would be determined on class certification and

where it is clear that plaintiffs cannot possibly prove the deleted portions of the claims).  In this case, defendants' motion to strike plaintiffs' class allegations is premature, and should be addressed at the class certification stage.  The defendants' motion to strike will be denied without prejudice to the defendants' ability to oppose certification on these same grounds.

Of course, plaintiffs may not pursue class claims based on any individual claim that has been dismissed.

CONCLUSION

The following claims for relief against the defendants are dismissed: plaintiffs' individual gender-based Equal Pay Act claims from the first cause of action; plaintiffs' individual gender-based Equal Pay Law claims from the second cause of action; plaintiffs' individual gender discrimination claims under the New York State Human Rights Law from the fifth cause of action; plaintiffs' individual gender discrimination claims under the New York City Human Rights Law from the seventh cause of action; plaintiffs' individual claims of aiding and abetting gender discrimination under the New York State Human Rights Law from the eleventh cause of action; plaintiffs' individual claims of aiding and abetting gender discrimination under the New York City Human Rights Law from the twelfth cause of action; and plaintiff's individual gender discrimination claims under Title VII from the thirteenth cause of action.

The defendants' motion to dismiss is GRANTED.

The defendants' motion to strike certain class action allegations is DENIED without prejudice to the defendants' ability to oppose certification on those same grounds.

The Clerk is directed to terminate the motion (Dkt. 61).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 14, 2017