UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ERNESTINE GRANT and STEPHEN WALKER,
as administrator of the estate of MARJORIE
WALKER, on behalf of themselves individually
and on behalf of all similarly situated persons,

                               Plaintiffs,                       16-cv-3175 (PKC)

                -against-                              OPINION AND
                                                                          ORDER

THE NEW YORK TIMES COMPANY, MARK
THOMPSON, in his individual and professional
capacities, and MEREDITH LEVIEN, in her
individual and professional capacities,

                               Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Stephen Walker, as administrator of the estate of Marjorie Walker, and Ernestine Grant, on behalf of themselves and all similarly situated persons, assert that defendants The New York Times Company ("the Times"), and two executives at the Times, Mark Thompson and Meredith Levien, discriminated against them on the basis of race, age, and, in Ms. Walker's case, disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1981 ("Section 1981"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., and the New York State Human Rights Law, N.Y. EXEC. L. § 290 et seq.[1]

---

[1] Plaintiffs' gender discrimination claims were dismissed in accordance with Rule 12(b)(6), Fed. R. Civ. P., on September 14, 2017. See Grant v. The New York Times Co., 16 cv 3175 (PKC), 2017 WL 4119279, at *9 (S.D.N.Y. Sept. 14, 2017).

Defendants have moved to strike the race- and age-based class claims brought under Title VII, Section 1981, and the corresponding state and city law claims in the Second Amended Complaint ("SAC") pursuant to Rule 12(f), Fed. R. Civ. P. Defendants claim that plaintiffs cannot meet the numerosity requirement to certify a class pursuant to Rule 23(a)(1), Fed. R. Civ. P. Defendants do not seek to strike the disability claims or any claims brought on behalf of the individually-named plaintiffs. For reasons that will be developed, defendants' requested relief will be granted under Rule 23(d)(1)(D), Fed. R. Civ. P.[2]

BACKGROUND

A description of plaintiffs' claims has been set out in detail in the Court's Memorandum and Order of September 14, 2017, and the Court assumes familiarity with these claims. See Grant, 2017 WL 4119279, at *1−3. Relevant here, plaintiffs seek to certify a class of "Black employees who have been, are now or will be employed by the [Times] in its Business division as Account Managers," ("Race Class") (SAC ¶224), and a class of "older employees who have been, are now or will be employed by the [Times] in its Business division as Account Managers" and who are over the age of forty ("Age Class"). (SAC ¶248; see SAC ¶¶23, 88). For the proposed Race Class, plaintiffs allege there have been "patterns, practices, and/or policies" of "disparate treatment and discrimination." (SAC ¶226). For the proposed Age Class, plaintiffs allege there have been "patterns, practice, and/or policies" that result in "discrimination or disparate impact discrimination." (SAC ¶253). For example, plaintiffs allege that they were denied promotion commensurate with their experience and were passed over for "younger, white individuals instead." (SAC ¶¶161, 206). Mr. Walker, on behalf of Ms. Walker, alleges that she

---

[2] At oral argument, defendants' counsel conceded that the better course of action would be dismissal based on Rule 23(d)(1)(D), Fed. R. Civ. P. See Hearing Tr., 18 ll. 16-18, Oct. 18, 2018 (Defs.' Counsel: "[The motion] may be more appropriately characterized as a 23(d)(1)(D) motion in terms of title with respect to the procedure.").

was demoted to a position on the "Help Wanted" advertising team from her position on the Fashion & Jewelry Team after telling her supervisor that she found her supervisor's comment describing Ms. Walker as a "tough girl" offensive and racially charged. (SAC ¶¶184−93). Both plaintiffs were offered a buyout, and Ms. Walker alleges that she and another older black employee were told that at the end of the ongoing restructuring, "only one of the two of them" would have a position. (SAC ¶¶216−17). Neither plaintiff accepted the buyout, nor alleges that any adverse consequences resulted from declining the buyout.

On September 14, 2017, before discovery began, the Court denied defendants' first motion to strike certain class allegations pursuant to Rules 23(b)(1) and 23(b)(2), Fed. R. Civ. P., "without prejudice to the defendants' ability to oppose certification on these same grounds." Grant, 2017 WL 4119279, at *9. Defendants subsequently produced to plaintiffs documents with identifying information for all current or past potential members of the proposed race and age classes, including employees who had signed documents releasing potential claims against the Times, within the applicable statutory time frame. (Declaration of Larissa R. Boz ("Boz Decl.") dated Aug. 17, 2018 at ¶3; Doc 112.) Defendants represent that there were ten Black individuals employed as Account Managers in the Advertising Department within the relevant period, including plaintiffs. (Declaration of Christopher Biegner ("Biegner Decl.") Ex. A; Doc 106.) Of that ten, four have signed a release relinquishing claims against the Times as part of their separation from employment. (Id.) Some of these releases were in the context of a voluntary buyout. (Id.) There were fifty-nine Account Managers who were forty or older during their employment in the Advertising Department within the relevant period, including plaintiffs. (Id.) Of that fifty-nine, thirty-five have signed releases relinquishing claims against the Times as part of their separation from employment. (Id.) Some of these releases were in the context of a voluntary buyout. (Id.)

Defendants also represent that all potential class members earn in excess of $90,000 and were tasked with selling advertising to large clients such as financial institutions, real estate brokers, and luxury good retailers. (Id. at 2).

DISCUSSION

    I.    <u>Legal Standard and Procedural History</u>

The Federal Rules of Civil Procedure vest district courts with broad discretion to prevent actions from becoming protracted and to discourage wasteful practices. <u>See, e.g.</u>, Rules 1 & 16(a), Fed. R. Civ. P. Rule 23(c) provides that "[a]t an early practical time after a person sues . . . as class representative, the court must determine by order whether to certify the action as a class action." The Rule does not set forth the means by which the issue of class certification may be brought before the Court for adjudication or the party who may do so, although it is commonly done by motion for class certification by the party seeking to proceed on a class-wide basis. This is the relatively rare case that class certification can be denied based upon limited discovery and without briefing of a full class certification motion.

Rule 23(a)(1) identifies as a prerequisite for class certification that "the class is so numerous that joinder of all members is impracticable. . . ." As will be discussed, lack of numerosity, alone, may doom class certification, but satisfaction of Rule 23(a)(1) may also turn on impracticability. The Times sought to raise the plaintiffs' inability to satisfy Rule 23 at the motion to dismiss stage. This Court, as noted, rejected the attempt.

The Court lifted a stay on discovery upon deciding the motion to dismiss. A subsequent Order set the close of fact discovery as January 12, 2018. (Order of Sept. 21, 2017; Doc 72.) The discovery deadline was extended to June 11, 2018, and ultimately September 10, 2018. (Orders of Nov. 28, 2017 and Feb. 23, 2018; Docs 76, 86.) After defendants had provided

over 4,000 documents to plaintiffs, a dispute arose as the scope of electronic discovery with the defendant arguing that plaintiffs were seeking voluminous class-wide discovery in a case doomed for class certification because of lack of numerosity. It sought permission to file a motion to strike the class claims limited solely to Rule 23(a)(1) considerations. (Ltrs. of June 25, 2018, June 28, 2018; Docs 92, 94.) The Court stayed discovery and set a schedule for the parties to submit their evidence on numerosity. (Order of July 2, 2018; Doc 98.) The motion to strike was fully briefed and argued.

Rule 23(d)(1)(D) vests the Court with the power to "require that the pleadings be amended to eliminate allegations about representation of absent persons . . . ." The provision is not merely an opportunity to tidy-up pleadings, but has a substantive component because it further provides that the order may provide that "the action proceed accordingly," i.e. as an individual action. Id. Determinations on class certification are "more properly deferred" from a decision on the pleadings so that "a more complete factual record can aid the Court in making this determination." Mazzola v. Roomster Corp., 849 F.Supp. 2d 395, 410 (S.D.N.Y.2012); see Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012). Once enough discovery has proceeded to allow the Court to reach a legal conclusion, a determination on a claim involving class certification may be reached. See 5 J. Moore et al., Moore's Federal Practice § 23.145 (3d ed. 2010) ("A court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims.").

"[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on the issue." Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228 (2d Cir. 2008)). "For example, if there is doubt about numerosity, discovery limited to that issue could result in an early

determination of the viability of class claims." Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 301 n.2 (S.D.N.Y. 2012); see Hidalgo v. Johnson & Johnson Consumer Cos., 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (stating that class certification may be denied if defendant can demonstrate an "impossib[ility]" of certifying the class "regardless of the facts [the p]laintiffs may be able to obtain during discovery") (alterations in original) (quoting Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)). But see Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) ("[A] motion to strike class claims is considered premature if the issues raised are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." (internal quotation marks omitted)).

### a. The Requirement of Numerosity

The numerosity requirement is satisfied when joinder of all class members is "impracticable." Rule 23(a), Fed. R. Civ. P.; see Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Plaintiffs need not set forth an exact class size to establish numerosity. Robidoux, 987 F.2d at 935. The Second Circuit has found that numerosity is presumed when a class consists of forty or more plaintiffs. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). "Generally speaking, courts will find that the 'numerosity' requirement . . . has not been satisfied when the class comprises [twenty-one] or fewer. However, these are not rigid parameters . . . ." Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (citations omitted). "[I]n cases falling into the gray area between [twenty-one] and [forty] class members, courts must consider factors other than class size." Id. "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits,

and requests for prospective injunctive relief which would involve future class members." Robidoux, 987 F.2d at 936.

II. Plaintiffs Cannot Demonstrate Numerosity for the Proposed Race Class

Plaintiffs' counsel at oral argument all but conceded that the number of potential individuals in the proposed Race Class cannot be more than ten individuals, including the two named plaintiffs, the employees who signed releases as part of voluntary buyouts, and employees who signed releases as part of other separation packages. Hearing Tr., 6 ll. 22-25; 7 l. 8, Oct. 18, 2018 (Court: "[Numbers are numbers, and with regard to the race class, if there are four who signed releases and six who didn't sign releases, at least as to the race class, the number still becomes ten . . . ." Pls.' Counsel: "Likely it will remain that . . . ."); see id. at 7 l. 11 (Pls.' Counsel: "I'm not calling into question the veracity of the data."); id. at 7 ll. 21-22 (Pls.' Counsel: "[T]he Court is correct that as of right now, I don't have a basis to say that ten may change.").

Six, or ten, individuals does not reach the presumption of numerosity, or the "gray area" in which additional factors must be considered. Ansari, 179 F.R.D. at 114; see Consol. Rail Corp., 47 F.3d at 483. The Supreme Court, discussing class certification for a proposed class with "as few as [fifteen] employees," has stated that, "[w]hen judged by the size of the putative class in various cases in which certification has been denied, this minimum would be too small to meet the numerosity requirement." Gen. Tel. Co. of N.W. v. E.E.O.C., 446 U.S. 318, 330 (1980). Plaintiffs have cited no cases where courts have certified classes as small as this. In addition, at least four of the individuals who have not signed the releases live or work in the vicinity of New York City. (Biegner Decl. Ex. A.; Doc 106.) Given these considerations, the Court holds that, as a matter of law, joinder for the Race Class is not impracticable. Plaintiffs are therefore directed to amend their SAC to remove claims with regard to the proposed Race Class.

### III. Plaintiffs Cannot Demonstrate Numerosity for the Proposed Age Class

Plaintiffs' putative Age Class contains twenty-four individuals that have not signed releases relinquishing claims against the Times. An additional twenty-two former employees who meet the criteria of the Age Class have signed releases as part of a voluntary buyout. (Id.)[3]

Plaintiffs argue that whether employees who signed the "voluntary" buyouts are properly included within the class is a question of fact that requires additional discovery. (Opp. Mem. at 10; Doc 109.) But employees who signed buyouts releasing their claims against the Times under Title VII, Section 1981, and the attendant state and city law claims have no claims to assert as members of an Age Class. Plaintiffs state for the first time in their Opposition Memorandum that class discovery is necessary to determine whether "'voluntary' buyouts were in fact voluntary, rather than rising to the level of constructive discharge or involuntary separation." (Id.) However, there are no allegations in the SAC that would call into question the validity of the buyouts's contract terms and, as the Court stated in its Order of September 14, 2017, there are no specific allegations that defendants retaliated against individuals for not accepting the buyouts. See Grant, 2017 WL 4119279, at *2 ("Ms. Walker did not accept the buyout, does not allege that any adverse consequences befell her as a result of refusing the buyout, and continues to work at The Times."); id. at *1 ("Ms. Grant was offered a buyout, but did not accept it.") (citing SAC ¶¶169-70).

The SAC makes a disparate treatment claim on behalf of older employees, claiming they were "pushed out through buyouts" at a disproportionate rate. (SAC ¶¶160, 205). The Times has produced evidence demonstrating that the voluntary buyouts were offered to all Account Managers in the Advertising Department who were employed for at least one year of service by

---

[3] An additional thirteen former employees who meet the criteria of the Age Class have signed releases as part of a separation or termination package. (Biegner Decl. Ex. A; Doc 106.) Plaintiffs make no argument with respect to this specific group of former employees.

- 8 -

the Times as of the date of the offer. (Declaration of Lawrence M Pearson dated Aug. 3, 2018 Ex. 1 at 11; Doc 110-1.) Plaintiffs do not dispute this evidence. Hearing Tr. 14 ll. 19-22, Oct. 18, 2018 (Court: "[T]his is not a case where the buyout was targeted to any one group. It's a buyout which anyone employed more than one year can take." Pls.' Counsel: "Correct, your Honor."). At a hearing on the motion, plaintiffs' counsel stated that plaintiffs' allegations concern "whether or not [the buyouts] had a disproportionate impact on the older employees." (Id. at 13 ll. 13-14). Yet there are no disparate impact claims in the SAC. The SAC uses the term "disparate impact" one time with respect to the proposed Age Class when summarizing questions of law and fact common to the class. (SAC ¶253). The description of plaintiffs' claims, however, alleges that the Times was motivated in its buyout policies by the illicit consideration of age. (SAC ¶¶330, 335, 340, 345) (stating in descriptions of the four causes of action brought with respect to the Age Class that members of the class were "select[ed] and direct[ed] . . . to accept buyouts"). This is a disparate treatment claim, not a disparate impact claim. See Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 95 (2008) ("[T]he very definition of disparate impact [i]s that an employer who classifies his employees without respect to age may still be liable . . . if such classification adversely affects the employee because of that employee's age.") (internal quotation marks omitted); Woodman v. WWOR-TV, Inc., 293 F. Supp. 381, 390 (S.D.N.Y. 2003), aff'd, 411 F.3d 69 (2d Cir. 2005).

Plaintiffs thus have a putative Age Class of twenty-four individuals, including the two named plaintiffs. In this "gray area," Ansari, 179 F.R.D. at 114, the Court considers additional factors that may make joinder impracticable, as discussed in Robidoux, 987 F.2d at 936.

First, plaintiffs fail to demonstrate why class certification, as opposed to joinder, would better serve the interests of judicial economy. This is not a case in which judicial economy

is served by the avoidance of a multiplicity of actions. "The Federal Rules of Civil Procedure do not permit a disregard of the requirements of 23(a) simply for the purposes of convenience." Haggerty v. Comstock Gold Co., 84 cv 7671 (JMW), 1986 WL 7797, at *3 (S.D.N.Y. July 8, 1986). The number of individuals in the class is smaller than that typically considered necessary to join suits for reasons of judicial economy. See Robidoux, 987 F.2d at 936 (finding judicial economy served by consolidation of "over 100 individual suits"); Haggerty, 1986 WL 7797, at *3 (finding joinder the proper remedy for twenty individuals). All Account Managers are members of the same collective bargaining unit as plaintiff Grant. (Boz Decl. Ex. B at 3−5; Doc 112-2.) Thus, plaintiffs "already have at their finger tips information sufficient to identify a large majority," if not all, potential class members, which also weighs in favor of finding joinder practicable because it "eases the burden placed on them to join other[s]" to this action. Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 269 F.R.D. 252, 258-59 (S.D.N.Y. 2010). And "[t]his is not a situation where individual members of the prospective class have filed or threatened to file their own actions." Ansari, 179 F.R.D. at 115. No additional plaintiffs have come forward since the filing of this case in April 2016. (Doc 1.)

Plaintiffs claim that judicial economy would be served in this case because potential class members have a "natural fear that comes with suing one's employer." (Opp. Mem. at 16; Doc 109.) (internal quotation marks omitted). Demonstrated "fear [of] retaliation by [an] employer" may support a finding that joinder is impracticable or class allegations are preferred. Spencer v. No Parking Today, Inc., 12 cv 6323 (ALC)(AJP), 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013), adopted by 2013 WL 2473039 (S.D.N.Y. June 7, 2013); see, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 169 (S.D.N.Y. 2014); Bishop v. New York City Dep't of Hous. Pres. and Dev., 141 F.R.D. 229, 235 (S.D.N.Y. 1992). Plaintiffs cite no evidence that any

proposed Age Class employee actually has fear of retaliation or reprisal. Ms. Grant, one of the plaintiffs in this suit, currently works at the Times, and does not allege any retaliation resulted from bringing suit against her employer. (See generally SAC.) Plaintiffs' counsel has not reached out to current employees of the Times to ask if proposed Age Class members currently employed would have interest in joining the suit or fear of retaliation.[4] (Opp. Mem. at 16; Doc 109.) In addition, ten of the twenty-four potential members of the proposed Age Class are not currently employed by the Times and would not have fears of retaliation for joining the suit. (Biegner Decl. Ex. A; Doc 106.) The Court will credit fear of retaliation to some degree, but is not persuaded that fear of retaliation is sufficient to make class certification serve the interests of judicial economy.

Second, plaintiffs have not provided evidence to demonstrate that the proposed class members are so geographically dispersed as to make joinder impracticable. Eleven of the individuals in the putative Age Class work in New York City, and an additional three were employed by the Times during the pendency of this action. (Id.) Plaintiffs have offered no evidence on whether the remaining potential class members are geographically dispersed, and, as mentioned above, plaintiffs likely have relevant contact information for all Account Managers as they are members of a collective bargaining unit.[5] (Boz Decl. Ex. 2 at 3-5; Doc 112-2). "[P]ure speculation" is insufficient to demonstrate impracticability of joinder and size of a class. Demarco

---

[4] There is no substance to plaintiffs' claim that ethical considerations precluded their counsel from speaking with would-be class members employed by the Times. (Opp. Mem. at 17; Doc 109) (citing Rule 4.2 of the New York Code of Professional Responsibility). Rule 4.2 prohibits attorneys from speaking with parties the lawyer knows to be represented by another lawyer in the matter, but only applies to "corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation." Niesig v. Team I, 76 N.Y.2d 363, 374 (1990); see Miano v. AC & R Advert., 148 F.R.D. 68, 76-77 (S.D.N.Y.), adopted by 834 F. Supp. 632 (S.D.N.Y. 1993) (adopting New York state court's interpretation). Account Managers at the New York Times are not employees whose acts or omissions are binding on the corporation. Plaintiffs offer no evidence beyond the word "manager" in their title in support of their assertion, (Opp. Mem. at 17; Doc 109), while the Times has submitted evidence that all Account Managers are employees who are part of units that collectively bargain with management, (Boz Decl. ¶15; Doc 112-2.)

[5] Plaintiffs argue that they need further discovery to determine the geographic location of employees who signed voluntary buyouts and claim releases. (Opp. Mem. at 19; Doc 109.) Because the Court already determined that those employees cannot form part of the class, the additional discovery request is moot.

v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); see Flores v. Anjost Corp., 284 F.R.D. 112, 123 (S.D.N.Y. 2012). Plaintiffs' conclusory assertions on geographic dispersion are insufficient to satisfy their burden on this issue.

Third, plaintiffs have not shown that the proposed class members lack sufficient financial resources to join plaintiffs' lawsuit. The Times has produced evidence, not contested by the plaintiffs, showing that each member of the putative Age Class earned in excess of $90,000 per year and, for those employees still actively employed with the Times, have been earning in excess of $90,000 per year for over five years. (Biegner Decl. ¶6; Doc 106.) This is not a case where plaintiffs are "economically disadvantaged, making individual suits difficult to pursue." Robidoux, 987 F.2d at 936; see id. (finding economic disadvantage where plaintiffs' incomes came solely from public assistance, unemployment insurance, or social security benefits); Spencer, 2013 WL 1040052, at *13 & n.38 (collecting cases finding limited financial means including example where class members "live[d] paycheck to paycheck") (internal quotation marks omitted); Jackson v. Foley, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (weighing the fact that class members "are from extremely low income households" in favor of finding numerosity).

Fourth, for similar reasons as those set forth with respect to consideration of the proposed class members' financial resources, plaintiffs also fail to show that the proposed class members are otherwise incapable of bringing individual lawsuits should they wish to do so. See Robidoux, 987 F.2d at 936. Plaintiffs advance claims for compensatory and punitive damages that they admit are seeking something greater than de minimis recovery. (Opp. Mem. at 20; Doc 109.) Plaintiffs seek damages for "loss of past and future income, wages, compensation, seniority, and other benefits of employment" for several years commencing in 2012, along with compensation for emotional harms and punitive damages, which would likely add up to tens of thousands of

dollars per plaintiff. (SAC at 73.) The ability to recover more than de minimis damages weighs against a finding of impracticability, as it is not the situation "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages . . . ." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980); cf. Stoudt v. E.F. Hutton & Co., 121 F.R.D. 36, 38 (S.D.N.Y. 1988) ("When the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device.").

Prospective class members in this case also have the practical ability to institute individual suits. "This is not a situation where the class members are incarcerated, unsophisticated, or elderly." Ansari, 179 F.R.D. at 115 (citations omitted). Rather, prospective class members are educated professionals who sold or sell advertising to large corporate clients. (Biegner Decl. ¶7; Doc 106; Opp. Mem. at 21; Doc 109.) Plaintiffs cite to Campbell v. Chadbourne & Parke LLP, 16 cv 6832 (JPO), 2017 WL 2589389 (S.D.N.Y. June 14, 2017), for the proposition that sophistication of proposed class members does not preclude bringing class claims. (Opp. Mem. at 21; Doc 109.) Campbell is inapposite. The Court in Campbell made no finding on whether sophistication of class members weighed in favor of numerosity; rather, it declined to strike class claims because discovery had not commenced, and the motion to strike was premature. See Campbell, 2017 WL 2589389, at *1, *3.

Fifth, plaintiffs bring claims seeking injunctive and declaratory relief, which would involve future class members. See Robidoux, 987 F.2d at 936. Future class members may make joinder more impracticable where a membership class is "fluid," Bruce v. Christian, 113 F.R.D. 554, 557 (S.D.N.Y. 1986), such as classes of individuals that are eligible for public housing or are incarcerated, id.; see Clarkson v. Coughlin, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) (defining class

of prison population where membership changed daily as "fluid"); see also Robidoux, 987 F.3d at 936 (describing consideration as whether class is "fluctuating"). In this case, the potential class cannot be described as fluid or fluctuating. There may be some small number of future employees at the Times' Advertising Department that satisfy the Age Class requirements and who would be affected by the conduct plaintiffs claim has occurred and continues to occur at the Times, but those few potential future members are not similar in kind or quantity to the fluid or fluctuating classes that make joinder more impracticable. Still, seeking an injunction that "would affect all potential class members," where "individual suits could lead to potentially inconsistent results," weighs slightly in favor of plaintiffs under this Robidoux factor. Robidoux, 987 F.3d at 936.

Taken together, although plaintiffs have requested injunctive relief that may affect a small number of unknown future class members, the totality of the Robidoux factors weigh in favor of finding that joinder as a matter of law is not impracticable with respect to the proposed Age Class. See Demarco, 390 F.2d at 845 ("[A] determination of practicability should depend upon all circumstances surrounding a case."). Because plaintiffs cannot meet the numerosity requirement under Rule 23(a), Fed. R. Civ. P. for the Age Class, plaintiffs are directed to amend the SAC to remove any claims with respect to the proposed Age Class.

CONCLUSION

Defendants' requested relief to strike class action allegations asserted on the basis of race and age is GRANTED pursuant to Rule 23(d)(1)(D), Fed. R. Civ. P. The Clerk is directed to terminate the motion (Doc 104.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 8, 2018